# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3409

_____

| | | |
|---|---|---|
| Evelyn Louise Long, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Minnesota. |
| | * | |
| Hubert H. Humphrey, III, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 14, 1999
Filed: July 14, 1999

_____

Before McMILLIAN, BRIGHT, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

Evelyn Louise Long appeals the denial of her petition for writ of habeas corpus. See 28 U.S.C. § 2254 (1996). We reverse.

Long stabbed her husband during a quarrel. At Long's state court jury trial, the main issue was whether Long acted in self-defense. Long's husband testified Long attacked him without provocation as he sat in a chair. On the other hand, Long testified her husband pushed her roughly and she retreated to the kitchen, grabbed a knife, and stabbed her husband when he came after her. The prosecutor called a police officer to rebut Long's testimony that her husband was standing when she stabbed him. The

officer had interviewed Long after her arrest and summarized the encounter in a written report disclosed to the defense before trial. The report stated Long "was lying on the sofa when her husband pushed her, she then got up[,] went into the kitchen and returned to the living room area with a knife, her husband then told her 'go ahead and do it', L[ong] then stabbed her husband who was sitting down." Shortly before the officer took the stand, he informed the prosecutor the interview had also been taped. The prosecutor promptly notified Long's counsel and the court outside the jury's presence and also explained the tape contained "two small points" not included in the officer's report – first, Long said she went to the bathroom before going into the kitchen, a point she denied at trial, and, second, Long said her husband had been drinking at the time of the stabbing, a circumstance about which Long did not testify.

Long initially moved for a mistrial. In response, the prosecutor offered to either waive rebuttal, play the entire tape and limit the officer's testimony to foundational issues, or not play the tape and limit the officer's testimony to the written report. The court instructed Long to listen to the tape and discuss her options with her counsel. After doing so, Long withdrew the mistrial motion, stating the "jury was picked by the defense" and she wanted "to have the jury hear the tape and let them evaluate it in the way that they think . . . [they] need to." The court acknowledged Long was making a knowing, intelligent, and voluntary waiver of her objections to the tape's late disclosure, but stated, "I'm not willing to put you in that position." Despite Long's desire to proceed, the court declared a mistrial on its own motion.

When the state sought to retry Long, Long moved to bar retrial as a violation of double jeopardy, arguing no manifest necessity required the trial court to grant a mistrial over her objection. The trial court denied Long's motion. After exhausting her state court remedies, Long filed a petition for writ of habeas corpus, which the federal district court denied.

On appeal, Long contends the district court should have granted her habeas petition because the trial court's declaration of a mistrial over her objection "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (1996).  We agree.

Because § 2254(d)(1) directs this court to grant Long's petition only if the trial court's decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, we must first identify the controlling case law. When a trial court orders a mistrial over the defendant's objection, the Supreme Court has stated double jeopardy bars a retrial unless there was manifest necessity for the mistrial.  See Arizona v. Washington, 434 U.S. 497, 503-05 (1978); United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824).  The Court has cautioned that manifest necessity is a high degree of necessity, see Washington, 434 U.S. at 506, and that the power to declare a mistrial over the defendant's objection should be exercised only "under urgent circumstances, and for very plain and obvious causes."  Perez, 22 U.S. (9 Wheat.) at 580; accord Washington, 434 U.S. at 506 n.18.

Given the existence of clearly established Supreme Court precedent governing Long's claim, we must next decide whether the trial court's decision was "contrary to" or an "unreasonable application" of that precedent.  See § 2254(d)(1).  These terms are undefined in § 2254, and, although we have not addressed the issue, their meaning and application have been the subject of much debate among other federal courts of appeals.  See Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 885-91 (3d Cir. 1999) (en banc), petition for cert. filed, (U.S. June 22, 1999) (No. 98-2050); Davis v. Kramer, 167 F.3d 494, 500 (9th Cir. 1999), petition for cert. filed, 67 U.S.L.W. 3570 (U.S. Mar. 8, 1999) (No. 98-1427); O'Brien v. Dubois, 145 F.3d 16, 21-25 (1st Cir. 1998); Green v. French, 143 F.3d 865, 869-73 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999); Neelley v. Nagle, 138 F.3d 917, 922-24 (11th Cir. 1998), cert. denied, 119 S. Ct. 811 (1999); Lindh v. Murphy, 96 F.3d 856, 868-71 (7th Cir. 1996) (en banc),

rev'd on other grounds, 521 U.S. 320 (1997); Drinkard v. Johnson, 97 F.3d 751, 767-69 (5th Cir. 1996). Because Long's appeal does not present a pure question of law and because the manifest necessity standard cannot be applied mechanically to require a particular result in Long's case, see Washington, 434 U.S. at 506, the parties concede the trial court's decision was not "contrary to" established Supreme Court precedent under any circuit's test. See, e.g., Drinkard, 97 F.3d at 768 ("contrary to" existing precedent if state court made error of pure law); O'Brien, 145 F.3d at 25 ("contrary to" if controlling case law requires different outcome either because of factual similarity to state case or because general federal rules require particular result in particular case).

Thus, the resolution of Long's appeal hinges on the unreasonable application prong of § 2254(d)(1). The circuits also differ about what is unreasonable in the application of the Court's precedent. Some circuits hold a state court's decision is unreasonable if the state court applied controlling precedent in a manner all reasonable jurists would agree was unreasonable, see Green, 143 F.3d at 870; Neelley, 138 F.3d at 924; Drinkard, 97 F.3d at 769, while other circuits consider whether the decision is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," O'Brien, 145 F.3d at 25; accord Hall v. Washington, 106 F.3d 742, 749 (7th Cir.), cert. denied, 118 S. Ct. 264 (1997); cf. Nevers v. Killinger, 169 F.3d 352, 362 (6th Cir. 1999) (combining these two tests), cert. denied, 67 U.S.L.W. 3654 (U.S. June 14, 1999) (No. 98-1665). The Third Circuit has rejected both of these tests, stating that the reasonable jurist test discourages the granting of relief by requiring federal habeas courts to hold the state court acted in a way no reasonable jurist would under the circumstances and that the outside-the-universe-of-plausible-outcomes test excludes all but those decisions so off the mark that they approach judicial incompetence. See Matteo, 171 F.3d at 889. Instead, the Third Circuit holds "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. at 890.

We find the Third Circuit's approach persuasive. Accordingly, we must objectively evaluate whether the trial court's declaration of a mistrial resulted in an outcome that cannot reasonably be justified under the manifest necessity standard. "'To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" Matteo, 171 F.3d at 890 (quoting O'Brien, 145 F.3d at 25). In making this evaluation, our "mere disagreement with the [trial] court's conclusions is not enough to warrant habeas relief." Id.

In Long's case, the trial court stated it declared a mistrial because:

> 1) [Long] credibly denied any memory of her statement to [the police officer]; 2) [Long] had testified without having had the opportunity to refresh her memory by listening to the tape; 3) [Long's] taped statement both supported and contradicted testimony of both [Long] and the other witnesses; 4) to have gone forward with the trial without using the tape would have deprived both parties of crucial and significant evidence supporting their respective cases; 5) to have gone forward with the trial with the tape being played for the jury would have unfairly prejudiced [Long] because regardless of any further explanation or instruction, the jury would have been left with the impression that [Long] had lied in her earlier testimony -- thus injecting, unfairly, a new element into the jury's deliberations.

In evaluating whether manifest necessity required this mistrial, "the critical inquiry is whether less drastic alternatives were available," United States v. Shafer, 987 F.2d 1054, 1057 (4th Cir. 1993); accord United States v. Givens, 88 F.3d 608, 612-14 (8th Cir. 1996); United States v. Dixon, 913 F.2d 1305, 1313-15 (8th Cir. 1990), and they were. Long's counsel and the prosecutor presented the trial court with a variety of mutually acceptable alternatives to mistrial. Of particular significance among the various available options were the prosecutor's offer to waive rebuttal altogether and her alternative offer to limit her examination to the officer's properly disclosed written

report, which included Long's earlier consistent and inconsistent statements and which would have allowed the prosecutor to rebut Long's testimony without allowing the prosecutor to benefit from the tape's improper disclosure. Additionally, Long was clearly willing to waive any objection to the tape's late disclosure or to any prejudice resulting from playing the entire tape to the jury. See Dixon, 913 F.2d at 1312 n.3, 1315; Shafer, 987 F.2d at 1058. Any of these alternatives would have alleviated the tape's potential prejudice to Long and allowed the trial to continue. Given the range of available and viable alternatives to mistrial, the trial court simply was not faced with the sort of urgent circumstances or the high degree of necessity contemplated by the manifest necessity standard. See Givens, 88 F.3d at 612-14; Dixon, 913 F.2d at 1313-14; Shafer, 987 F.2d at 1057-59. Thus, we conclude the trial court's decision, evaluated objectively and on the merits, was an unreasonable application of clearly established Supreme Court precedent.

Because no manifest necessity justified the trial court's declaration of a mistrial, Long's retrial is barred by double jeopardy. We reverse the district court's order and remand with instructions to grant the writ of habeas corpus.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.