Larry B. SCOTT, Petitioner,

v.

Frank HOPKINS, Respondent.

No. 4:98CV3157.

United States District Court,
D. Nebraska.

Aug. 25, 1999.

**1040**

David R. Stickman, Federal Public Defender's Office, Omaha, NE, for Larry B. Scott, petitioner.

Marilyn B. Hutchinson, Attorney General's Office, Lincoln, NE, for Frank X. Hopkins, respondent.

### MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

This matter is before the court on the Magistrate Judge's Report and Recommendation (filing 17) and the Petitioner's objection to such Report and Recommendation (filing 20), filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the Report and Recommendation to which objections have been made. I find that the Report and Recommendation should be adopted.

At the time the Report and Recommendation was filed, the Eighth Circuit Court of Appeals had not ruled on the interpretation of 28 U.S.C. § 2254(d)(1), and there was a split in the circuits regarding the amount of deference that federal courts should accord state court decisions. For the reasons explained in his well-reasoned Report and Recommendation, Judge Piester adopted the interpretation of the Third Circuit Court of Appeals. (Report and Recommendation at 13.) The Third Circuit adopted the interpretation of the "contrary to" clause of section 2254(d)(1) adopted in *O'Brien v. Dubois*, 145 F.3d 16, 24–25 (1st Cir.1998). *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir.1999) (en banc), *petition for cert. filed*, —— U.S. ——, 120 S.Ct. 73, 145 L.Ed.2d 62 (1999)(No. 98–2050). The Third Circuit propounded its own interpretation of the "unreasonable application of" clause of section 2254(d)(1), *id.* at 890 ("[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."). Since the filing of the Report and Recommendation, the Eighth Circuit has adopted the "contrary to" interpretation of *O'Brien*. *Richardson v. Bowersox*, 188 F.3d 973, 975 (8th Cir. 1999) (citing *Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir.1999)). The Eighth Circuit has also adopted the Third Circuit's interpretation of the "unreasonable application of" clause. *Richardson, id.* (quoting *Matteo*, 171 F.3d at 890). Accordingly, the Report and Recommendation applies the same interpretation of the "contrary to" and "unreasonable application of" clauses of section 2254(d) (1) as that subsequently adopted by the Eighth Circuit.

Inasmuch as Judge Piester has fully, carefully, and correctly found the facts and applied the law, anticipating the Eighth Circuit's holdings in *Richardson* and *Long*, I need only state that the petitioner's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (filing 1) should be denied in all respects.

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (filing 17) is adopted;

2. Petitioner's objection to the Magistrate Judge's Report and Recommendation (filing 20) is denied;

3. Petitioner's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 (filing 1) is denied; and

4. Judgment shall be entered by separate document..

## MEMORANDUM, ORDER AND RECOMMENDATION

Piester, United States Magistrate Judge.

Before the court for consideration is a petition for writ of habeas corpus filed by the petitioner, Larry B. Scott. (Filing 1). For reasons discussed more fully below, I shall recommend that the petition be denied in its entirety.

## BACKGROUND

This habeas corpus case arises from petitioner's conviction for two counts of robbery and two counts of use of a weapon to commit a felony. On September 13, 1992, between 10:40 p.m. and 11:00 p.m., petitioner and an accomplice allegedly robbed Grisanti's Restaurant in Omaha, Nebraska. Although the two men wore nylon masks over their faces, the manager of the restaurant, as well as two employees, recognized one of the robbers as the petitioner, Larry Scott, a former Grisanti's employee. They recognized petitioner from his voice, his teeth, his shoes, his facial features and the way he walked. Also, one of the robbers called the manager by name.

Petitioner raised an alibi defense at his trial. He testified that at approximately 10:20 p.m. on the night of the robbery, he received a phone call at his fiancee's house from his fiancee's daughter asking to be picked up at her aunt's house. (Attach. 8, ex. 16 at 259:19–260:2). Petitioner testified that he picked his fiancee's daughter up and arrived back at his fiancee's house at around 10:30 or 10:35 p.m. (*Id.* at 260:3–5). Petitioner further testified that he remained at his fiancee's home the rest of the night. (*Id.* at 260:6–7). Petitioner's testimony was corroborated, in part, by Katrina Wallace, a friend of petitioner. Ms. Wallace testified that petitioner's fiancee, Cha–Cha Swift, was babysitting her son and her daughter on the night of the robbery. (*Id.* at 245:10–246:4). She also testified that when she arrived to pick up her son, a little after 11:00 p.m. on the same night, petitioner was present at Ms. Swift's home. (*Id.* at 246:10–16). The jury ultimately rejected petitioner's defense and convicted him on all counts. Thereafter, petitioner was found to be a habitual criminal and sentenced to sixteen to twenty years on the robbery counts and twelve to fourteen years on the use of a firearm convictions, the sentences to be served consecutively. Although petitioner indicated at sentencing that he wanted to file an appeal, no appeal was ever taken.

On July 31, 1995 petitioner filed a motion for postconviction relief in the District Court of Douglas County, Nebraska. In his motion petitioner alleged that his counsel failed to perfect a direct appeal as he had requested and that his counsel had failed to call alibi witnesses at trial. The district court granted petitioner's request for an evidentiary hearing on the motion.

With respect to petitioner's allegation that his counsel failed to file an appeal, petitioner indicated at his sentencing hearing that he intended to appeal his convictions. (Attach. 8, ex. 17 at 8:9–17; 11:12–17). At the close of petitioner's sentencing hearing, Ms. Levon Stennis, petitioner's trial attorney, agreed to represent petitioner on appeal. (*Id.* at 11:24–12–4). At that time, she believed that the identification issue was the only one worth raising in an appeal; she nevertheless told petitioner that she would scour the record for other issues. Petitioner testified that approximately eight days after he had been sentenced, he called Ms. Stennis from the Diagnostic and Evaluation Center ("D & E") and asked her whether she had found any more issues to appeal. (Attach. 8 at 66:2–4). Ms. Stennis replied that she had not. (*Id.* at 66:4–6). Petitioner stated that after being transferred to the Nebras-

ka State Penitentiary, approximately ninety days after arriving at D & E, he called Ms. Stennis once again to inquire about the status of his appeal. (*Id.* at 66:9–17). During this conversation, petitioner allegedly learned for the first time that Ms. Stennis had not filed an appeal. (*Id.* at 66:19–25).

Ms. Stennis gave a different version of the events that transpired between petitioner's sentencing hearing and the final date to file his appeal. Ms. Stennis testified that following the sentencing proceeding, petitioner vacillated between wanting her to file an appeal or a second motion for a new trial.[1] According to Ms. Stennis, petitioner spoke more about a motion for a new trial than an appeal because he believed that the testimony of his half-brother, Ed Greer, would secure him an acquittal. (*Id.* at 110:6–14; 123:6–14). Mr. Greer allegedly had information that would have exonerated petitioner of the robberies. (*Id.* at 97:23–98:2). Petitioner allegedly told Ms. Stennis that Mr. Greer would be calling her soon with the new information, but he never came forward. (*Id.* at 93:9–94:8, 95:12–18).

As the final day for filing petitioner's appeal approached, Ms. Stennis once again spoke with petitioner. (*Id.* at 124:12–125:4). During this conversation petitioner expressed anger about Mr. Greer not cooperating. (*Id.* at 124:18–24). Ms. Stennis then asked petitioner whether he wanted her to file an appeal, and he replied, "Fuck it," and hung up the phone. (*Id.* at 94:4–5, 9–11). Based on this response, Ms. Stennis did not file an appeal. (*Id.* at 94:12–13).

With respect to the allegation that petitioner's counsel failed to call alibi witnesses, Ms. Stennis testified that petitioner told her that Cha–Cha Swift was an alibi witness. (*Id.* at 83:23–84:3). However, after speaking to Cha–Cha Swift, Ms. Stennis determined that she could not corroborate defendant's alibi because she was

asleep when the robbery occurred. Ms. Swift also told Ms. Stennis that when she woke up, petitioner was gone. (*Id.* at 84:1–3). Ms. Swift further told Ms. Stennis that she did not want to testify because she could not provide an alibi for petitioner. (*Id.* at 89:1–6). Finally, petitioner allegedly told Ms. Stennis that he did not want to put Ms. Swift through having to testify. (*Id.* at 89:6–7).

At the postconviction hearing, however, Cha–Cha Swift testified that petitioner left her home at approximately 10:30 or 10:45 p.m. to pick up her daughters, Shampagne and Tawaina Swift. (*Id.* at 39:5–6). Ms. Swift also testified that Katrina Wallace dropped her son Justin off at her (Ms. Swift's) house at "ten something" and picked him up around 11 or 11:30 p.m. (*Id.* at 35:20–37:25). She further testified that petitioner was at her home when Katrina returned to pick up her son. (*Id.* at 38:1–6).

Shampagne and Tawaina Swift also testified at the postconviction hearing about petitioner's whereabouts on the night of the robbery. Shampagne remembered that petitioner picked up her and her sister between 11:00 and 11:15 p.m. that night. (*Id.* at 12:10–17). Tawaina recalled that petitioner picked them up at around 10:30 or 11:00 p.m. (*Id.* at 20:11–15). They both testified that Ms. Stennis never interviewed them. (*Id.* at 9:23–25; 23:11–17).

Ms. Stennis testified that she did not interview Shampagne and Tawaina because although she had repeatedly asked petitioner prior to trial about his whereabouts on the night of the robbery, he never told her that he had picked up Shampagne and Tawaina on the night of the robbery. (*Id.* at 87:11–88:13). It appears that the first time she became aware of this information was during petitioner's direct testimony. (*Id.* at 87:22–25).

Based on the evidence presented at the postconviction hearing, the state district

---

1. Ms. Stennis had previously filed a motion for a new trial after the verdict, which was overruled.

court concluded that petitioner was not entitled to postconviction relief. With respect to petitioner's ineffective assistance claim regarding counsel's alleged failure to file a direct appeal, the district court stated, in part: "I believe that the Defendant told his lawyer not to appeal the case in no uncertain terms ...." (Attach.2). The court also concluded that petitioner's appeal would have been without merit. (*Id.*) The district court also found, with respect to petitioner's claim that his counsel failed to interview alibi witnesses, that

> The testimony of Mrs. Swift and Dawonda Swift[2] that each was in the presence of the Defendant at a place far and distant from the robbery at approximately the time it occurred, but told neither the police nor counsel for the Defendant of that fact even though they attended the trial, strains my credulity. But, the point is not whether I find the witnesses to be credible, but whether this testimony, had it been offered at trial, would have affected the outcome of the case. My view is that this testimony would be cumulative to the testimony of the Defendant's trial witness to substantially the same effect.

(*Id.*)

Petitioner then appealed to the Nebraska Court of Appeals, which affirmed the district court's decision without opinion. Thereafter, the Nebraska Supreme Court denied petitioner's petition for further review.

In this habeas corpus action petitioner argues that his counsel was ineffective for the following reasons:

(1) Failure to perfect a direct appeal as petitioner requested;

(2) Failure to advise petitioner that a motion for a new trial, based on the statement of Ed Greer, would have been futile because petitioner was aware of the statement prior to trial;

(3) Failure to advise petitioner that the prosecution's failure to disclose to petitioner a witness's statement could have secured a reversal of his conviction;

(4) Failure to object at trial to the prosecution's practice of permitting witnesses to review police reports prior to testifying;

(5) Failure to object to the prosecution's use of the habitual criminal enhancement provision only after petitioner would not plead guilty; and

(6) Failure to call Cha–Cha Swift to testify to rebut the testimony of petitioner's parole officer that Cha–Cha told him that petitioner was not at home the night of the robbery.

(Filing 1).

In filing 7 the Honorable Richard G. Kopf, United States District Judge, dismissed claims (2)-(5) without prejudice because petitioner failed to file an amended petition in accordance with this court's order, (*see* filing 6). As a result, respondent was required to answer only claims (1) and (6). (*See* filing 8). Following the filing of respondent's answer, (filing 10), I entered a progression order requiring, among other things, that the parties submit pertinent state court records and briefs on the issues raised by this action. (*See* filing 11). The parties have now submitted their briefs on the merits of petitioner's claims. I shall consider petitioner's claims below.[3]

## STANDARD OF REVIEW

On April 24, 1996, President William J. Clinton signed into law the Antiterrorism Effective Death Penalty Act ("AEDPA"), which enacted statutory provisions regard-

---

**2.** No person named Dawonda Swift testified at the state evidentiary hearing. The district judge must have been referring to either Shampagne or Tawaina Swift, who along with their mother, Cha–Cha Swift, testified at the hearing.

**3.** Although respondent claimed in his answer that petitioner had procedurally defaulted on his claims, respondent did not raise this argument in his brief. I therefore consider this position abandoned. *See* NELR 39.2(c); *Norfolk v. Houston,* 941 F.Supp. 894, 897 (D.Neb. 1995) (citing *Reeves v. Hopkins,* 871 F.Supp. 1182, 1217–18 (D.Neb.1994)).

ing the standard of review in federal habeas corpus cases.[4] *See* 28 U.S.C. § 2254 (West 1994 & Supp.1999). Under the new provisions, with respect to questions of fact, a federal court may grant habeas relief only if the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(2) (West Supp.1999). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1) (West Supp.1999).

Section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1) (West Supp.1999). Because the AEDPA is "hardly a model of clarity," *O'Brien v. Dubois*, 145 F.3d 16, 20 (1st Cir.1998); *see Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997) (observing that "in a world of silk purses and pigs' ears, [AEDPA] is not a silk purse of the art of statutory drafting"), the proper interpretation of § 2254(d)(1) has been the subject of great debate, generating at least four distinct approaches among the circuit courts.[5] The differences among the circuit courts has to do generally with the amount of deference that federal courts should accord state court decisions.

The first distinct approach was developed by the Courts of Appeals for the Fifth, Seventh and Eleventh Circuits. *See Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997); *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Neelley v. Nagle*, 138 F.3d 917 (11th Cir.1998), *cert. denied*, 525 U.S. 1075, 119 S.Ct. 811, 142 L.Ed.2d 671 (1999). Under the approach developed by these courts, a federal habeas court must first determine whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. Because § 2254(d)(2) applies to questions of fact, the Fifth, Seventh and Eleventh Circuits concluded that § 2254(d)(1) must apply to questions of law and mixed questions of law and fact. These courts have determined that questions of law are reviewed under the "contrary to" prong of § 2254(d)(1), and mixed questions of law and fact are reviewed under the "unreasonable application"[6] prong of § 2254(d)(2). *Drinkard*, 97 F.3d at 766–68; *Lindh*, 96 F.3d at 870; *Neelley*, 138 F.3d at 922–25.

The second approach, which is similar to the one adopted by the Fifth, Seventh and Eleventh Circuits, was adopted by the United States Court of Appeals for the Fourth Circuit in *Green v. French*, 143 F.3d 865 (4th Cir.1998). However, the Fourth Circuit's approach differs from that of the Fifth, Seventh and Eleventh Circuits in that it "attempts to catalogue the situations in which a result might be 'con-

---

**4.** Prior to the passage of the AEDPA, federal habeas courts were not required to "pay any special heed to the underlying state court decision." *O'Brien v. Dubois*, 145 F.3d 16, 20 (1st Cir.1998) (citing *Brown v. Allen*, 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469 (1953)).

**5.** As of the date of this report and recommendation, the Eighth Circuit Court of Appeals has yet to address this issue.

**6.** The Fifth Circuit has held that "an application of law to facts is *unreasonable* only when

it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Drinkard*, 97 F.3d at 769; *see also Neelley*, 138 F.3d at 924–25 ("The state court decision must stand unless it is not debatable among reasonable jurists that the result of which petitioner complains is incorrect."); *Lindh*, 96 F.3d at 871 (stating that the "unreasonable application" language "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.' ").

trary to' or an 'unreasonable application of' a higher court's precedent." *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 888 (3rd Cir.1999).

In *Green* the court stated that "a decision is 'contrary to' precedent only when, either through a decision of pure law or the application of facts indistinguishable in any material way from those on the basis of which the precedent was decided, that decision reaches a legal conclusion or a result opposite or irreconcilable with that reached in the precedent that addresses the identical issue." *Id.* at 886. If no controlling decision exists, then the habeas court must review the state court's decision under the "unreasonable application of" prong of § 2254(d)(1).

According to the court in *Green,* "unreasonable application of" Supreme Court precedent occurs

> when [a state court] extends the legal principle of that precedent to a new context in which the application of that principle is not reasonable, or conversely, as above, when, unreasonably, it fails to extend a principle to a context to which the principle should be extended. But it is also considered to be an "unreasonable application of" a supreme court precedent when an inferior court applies the correct principle from the higher court's precedent, but unreasonably applies that principle to the facts before it, assuming the facts are not so different from those that gave rise to the precedent as to constitute an entirely new context, requiring examination anew of the applicability of the principle. (If the facts are sufficiently different from those of the precedent, then the application of the principle to those facts may entail not so much the mere application of law to fact, as customarily understood, but, rather, the application of the legal principle to an entirely new context.)

*Id.* at 869. Thus, under the Fourth Circuit's approach, the "unreasonable application of" prong applies to three specific scenarios: (1) when the state court ex-

tends Supreme Court precedent to a new factual scenario in which the application of that precedent is not reasonable; (2) when the state court fails to extend Supreme Court precedent to a factual context that warrants its application; and (3) when the state court unreasonably applies the correct Supreme Court precedent to the facts of the case before it. *Matteo,* 171 F.3d at 887. The Fourth Circuit further stated that a state court decision will be deemed to be unreasonable "only when the state courts have decided the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Green,* 143 F.3d at 870.

The third distinct approach was promulgated by the United States Court of Appeals for the First Circuit in *O'Brien v. Dubois,* 145 F.3d 16 (1st Cir.1998). Under the First Circuit's approach, a federal court must first determine "whether the Supreme Court has prescribed a rule that governs the petitioner's claim." *Id.* at 24. To provide further guidance, the court stated that "the key inquiry, at bottom, is whether a Supreme Court rule—by virtue of its factual similarity (though not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations—can fairly be said to require a particular result in a particular case." *Id.* at 25. As an example of a Supreme Court case intended to provide a general rule for varying factual circumstances, the court cited *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which prescribed a rule governing ineffective-assistance-of-counsel claims. *Id.* at 25 & n. 6. If the federal habeas court concludes that the Supreme Court has prescribed a rule governing the petitioner's claim, then the federal court must determine "whether the state court decision is 'contrary to' the governing rule." *Id.* at 24. For a petitioner to obtain relief under this prong, he or she "must show that Supreme Court precedent requires an out-

come contrary to that reached by the relevant state court." *Id.* at 24–25.

If there is no governing rule of law, the federal court must "determine[ ] whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an 'unreasonable application' of Supreme Court precedent." *Id.* at 24 (citation omitted). For the state court decision to be unreasonable, the First Circuit stated that the decision "must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Id.* at 25.

Finally, the fourth distinct approach was recently expounded by the Third Circuit in *Matteo v. Superintendent, SCI Albion, supra.* Although the Third Circuit's approach is similar to the First Circuit's interpretation, it differs in two respects.

First, unlike the First Circuit which does not require a federal court to determine whether the state court decision involved an "unreasonable application of" clearly established federal law, as determined by the Supreme Court, unless no Supreme Court rule governs the petitioner's claim, *see O'Brien,* 145 F.3d at 25, the Third Circuit requires a federal habeas court to proceed to the second inquiry (whether the decision was based on an unreasonable application of Supreme Court precedent) even if there is a governing rule of law and the federal habeas court determines that the state court decision was not contrary to that applicable law, *see Matteo,* 171 F.3d at 889.[7]

Second, the Third Circuit declined to adopt the First Circuit's understanding of what constitutes an "unreasonable application" of clearly established federal law.

The Third Circuit stated that the First Circuit's interpretation of "unreasonable application" clause would render the clause "a virtual nullity, as granting habeas relief would require an explicit finding that the state court decision—often a decision of the state's highest court—was so far off the mark as to suggest judicial incompetence."[8] *Matteo,* 171 F.3d at 889. The Third Circuit, therefore, propounded its own interpretation of the "unreasonable application" clause. The court stated:

> [T]he appropriate question is whether the state court's application of Supreme Court precedent was objectively unreasonable. The federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. In making this determination, mere disagreement with the state court's conclusions is not enough to warrant habeas relief.

*Id.* at 889–90.

After reviewing the various constructions of § 2254(d)(1), I believe that the most trenchant interpretation is the Third Circuit's. I therefore shall adopt it for the purposes of deciding this case.

## DISCUSSION

In this case, petitioner claims that his counsel was ineffective in two respects: (1) she failed to file an appeal as he requested and (2) she failed to call three alibi witnesses to testify. The governing rule regarding ineffective-assistance-of-counsel claims is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80

---

7. The Third Circuit stated:
 If the federal habeas court determines that the state court decision was not "contrary to" the applicable body of Supreme Court law—either because the state court decision complies with the Supreme Court rule governing the claim, or because no such rule has been established—then the federal habeas court should undertake the second step of analyzing whether the decision was based on an "unreasonable application of" Supreme Court precedent. *Matteo,* 171 F.3d at 889.

8. The Third Circuit also rejected the "reasonable jurist" test articulated by the Fourth and Fifth Circuits, stating that this standard "would doubtless lead to the denial of virtually all petitions." *Id.* at 889.

L.Ed.2d 674 (1984). I therefore must decide, first, whether the state court decision was "contrary to" the Supreme Court rule, and, second, if it was not "contrary to," then whether the decision was based on an "unreasonable application of" Supreme Court precedent. *See Matteo, supra.* For the reasons discussed below, I conclude that the state court did not render a decision that was either contrary to a governing rule set forth by the Supreme Court or involved an unreasonable application of Supreme Court precedent.

### CLAIM (1)

■■ Petitioner first alleges that his counsel failed to file an appeal from his convictions for robbery and use of a firearm during the commission of a felony, in accordance with his wishes. Ordinarily, to establish ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. However, "[i]n situations where ineffective assistance of counsel deprives a defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal." *Robinson v. Wyrick,* 635 F.2d 757 (8th Cir.1981). Thus, if the defendant proves that counsel failed to file a notice of appeal when asked to do so, the defendant need not "specify the points he would raise on appeal in order to make a showing of ineffective assistance of counsel," *Hollis v. United States,* 687 F.2d 257, 259 (8th Cir. 1982), and he need not demonstrate prejudice from the failure to file the appeal. *Holloway v. United States,* 960 F.2d 1348, 1356–57 (8th Cir.1992); *Estes v. United States,* 883 F.2d 645, 649 (8th Cir.1989); *Hollis,* 687 F.2d at 259. If the defendant prevails, he or she must be resentenced with "the time for appeal then commencing

to run from the date of the resentence." *Hollis,* 687 F.2d at 259.

■ The state district court previously found: "I believe the Defendant told his lawyer not to appeal the case in no uncertain terms . . . ." [9] (Attach. 9 at 50). This factual determination is presumed to be correct unless petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C.A. § 2254(e)(1) (West Supp.1998). For the reasons discussed below, petitioner has not sufficiently rebutted the presumption.

Petitioner contends that the testimony of Ms. Stennis should be found incredible for several reasons, including, *inter alia,* the fact that Ms. Stennis could not remember when she spoke to petitioner about whether he wanted to file a notice of appeal; Ms. Stennis did not adequately explain why she did not file a notice of appeal while investigating newly discovered evidence for a motion for a new trial; the district court had already denied one motion for a new trial; and Ms. Stennis had been told by Mr. Greer's attorney not to talk to his client any further.

Even though Ms. Stennis did not have exact recall of the dates of her conversations with petitioner, I note that the conversations took place four years prior to her testimony in this case and that Ms. Stennis did remember the substance of her conversations with petitioner. Ms. Stennis's inability to remember exact dates of conversations that occurred several years earlier simply does not abate her credibility.

Also, I do not find that Ms. Stennis's credibility was diminished by the fact that she could have filed a notice of appeal while investigating grounds for a new trial. Ms. Stennis's asserted reason for not filing a notice of appeal was that petitioner was

9. The state district court also determined that petitioner could not demonstrate that he was prejudiced by his counsel's alleged failure to file an appeal because the sole basis for his appeal was without merit. However, as discussed *supra,* the Eighth Circuit has determined that a defendant need not demonstrate prejudice from the failure to file an appeal. *Holloway, supra; Estes, supra.* I therefore do not consider the state district court's conclusion regarding the prejudice prong of the *Strickland* test.

not interested in pursing an appeal but, rather, was focused on filing a motion for a new trial based on newly discovered evidence. Complying with her client's wishes is certainly a valid reason for not filing an appeal. As such, I decline to find Ms. Stennis's testimony to be incredible.

I now turn to petitioner's contention that Ms. Stennis's testimony should be found incredible because the district court had previously denied a motion for a new trial. Presumably, it is petitioner's assertion that it is unlikely that petitioner would have wanted to file a second motion for a new trial because the first one had been denied. I note initially that petitioner's original motion for a new trial was not based on newly discovered evidence. (Attach. 9 at 36). His second motion for a new trial would have been, though. According to Ms. Stennis, petitioner believed that his best chance for an acquittal was a motion for a new trial based on newly discovered evidence, not an appeal. (Attach. 8 at 110:6–14). If petitioner believed that Mr. Greer could exonerate him, it is certainly believable that petitioner ignored his appeal, and instead focused on a second motion for a new trial.

Furthermore, even though Ms. Stennis had been told by Mr. Greer's attorney that he did not want Ms. Stennis speaking to his client any further, according to Ms. Stennis it was petitioner, not her, who was pushing for a motion for a new trial. It also was petitioner, not Ms. Stennis, who was trying to convince Mr. Greer to bring forth testimony that allegedly would have exonerated petitioner. Because Ms. Stennis was waiting for Mr. Greer to approach her, as opposed to her seeking him out, I fail to discern why her testimony regarding petitioner's persistence on filing a motion for a new trial based on Mr. Greer's testimony should be considered not credible.[10]

Finally, when examining the testimony from the postconviction hearing, I must remember that the state district judge found Ms. Stennis, a practicing attorney, more credible than petitioner, a convicted felon. Considering that petitioner had everything to gain and nothing to lose by testifying that he ordered Ms. Stennis to file an appeal, I am reluctant to find Ms. Stennis's version incredible absent evidence corroborating petitioner's version. Petitioner has brought forth no such evidence, I therefore defer to the findings of the state district judge.

 Despite the finding that petitioner told his counsel not to file an appeal, he, nevertheless, argues that Ms. Stennis was ineffective for permitting him to make the decision of whether to file a notice of appeal. I reject this argument. In *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the United States Supreme Court reiterated "that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, *or take an appeal* ...." *Id.* at 751, 103 S.Ct. 3308 (emphasis added). Here, petitioner was advised by Ms. Stennis that he had a right to appeal. (Attach. 8 at 123:1–3). She further advised him that he ought to file an appeal. (*Id.* at 124:24–25). Despite this advice, petitioner insisted on pursuing a motion for a new trial, instead of an appeal. Under these circumstances, Ms. Stennis's decision to abide by defendant's informed choice cannot be considered ineffective assistance of counsel. *Jones, supra; cf. Don v. Nix*, 886 F.2d 203, 207 (8th Cir.1989) ("Counsel is only permitted to make strategic choices faithful to the defendant's basic elections."); *United States v. Teague*, 953 F.2d 1525, 1532–33 (11th Cir.1992) ("Defense counsel bears

---

10. In his brief petitioner also asserts that Ms. Stennis's testimony should not have been found to be credible because she testified that after petitioner told her to "fuck it," she received a letter from petitioner requesting new counsel. (*Id.* at 94:2–8). This "letter" was filed on December 15, 1994, (*see* attach. 9 at 4), approximately eight months after the appeal deadline had expired. I conclude that this does not diminish Ms. Stennis's credibility.

the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.").

Although the state district court erred in determining whether petitioner was prejudiced by his counsel's alleged failure to file an appeal, *see* note 9, *supra*, I conclude that the court's ultimate decision—that petitioner's counsel did not render ineffective assistance—was not "contrary to" Supreme Court precedent, *see Strickland*, *supra; Barnes, supra.* Furthermore, I do not find the state court's holding to be an objectively "unreasonable application of" the applicable body of law. *See Matteo*, 171 F.3d at 889–90.

## CLAIM (6)

As discussed above, the governing law concerning claims of ineffective assistance of counsel requires the petitioner to show that his lawyer performed in such a professionally unreasonable manner that he was not meeting the standards of "counsel" guaranteed by the Sixth Amendment, and that petitioner suffered prejudice in the case as a result of those errors. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Regarding prejudice to petitioner's case, the Supreme Court has required that petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The reasonable strategic and tactical decisions made by trial counsel cannot be the basis for a finding of ineffective assistance of counsel. *Id.* at 690–91, 104 S.Ct. 2052.

 Here, petitioner contends that his counsel was ineffective for failing to call three alibi witnesses: Cha–Cha Swift, Shampagne Swift and Tawaina Swift. The postconviction trial court found:

> The testimony of Mrs. Swift and Dawonda Swift that each was in the presence of the Defendant at a place far and distant from the robbery at approximately the time it occurred, but told neither the police nor counsel for the defendant of that fact even though they attended the trial, strains my credulity. But, the point is not whether I find the witnesses to be credible, but whether this testimony, had it been offered at trial, would have affected the outcome of the case. My view is that this testimony would be cumulative to the defendant's trial witness to substantially the same effect.

(Attach. 9 at 50). It is clear from this passage that the state district judge did not find the testimony of Cha–Cha, Shampagne, and Tawaina to be credible. This conclusion is entitled to deference. 28 U.S.C. § 2254(e)(1). Petitioner has presented no evidence to rebut this presumption, and therefore I am bound by this determination. However, because the state district court's determination regarding the cumulative nature of the testimony is not a factual finding, it is not entitled to a presumption of correctness. Accordingly, I must consider whether the trial court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1) (West Supp.1999).

As an initial matter, I must state my disagreement with the state district judge's conclusion that the testimony of Shampagne, Tawaina, and Cha–Cha would have been merely cumulative to Katrina Wallace's trial testimony. Ms. Wallace testified at petitioner's trial that petitioner was present at Cha–Cha's home when she dropped her son off at approximately 8:40 p.m. on the night of the robbery and that he was also there when she returned to pick her son up at approximately 11:00 p.m. that same evening. (Attach. 8 at 246:3–14). The robbery allegedly occurred between 10:40 and 11:00 p.m. Thus, Ms. Wallace could not vouch for petitioner's whereabouts during the crucial period of time when the robbery allegedly occurred.

Shampagne, Tawaina and Cha–Cha could have, however. They testified at the state evidentiary hearing that they were with petitioner between 10:30 and 11:00 p.m. on that night. (Attach. 9 at). Their testimony, if true, would have obviously been more helpful to petitioner's alibi defense than Ms. Wallace's testimony. As such, I conclude that their testimony would not have been just cumulative of Ms. Wallace's testimony. Despite my disagreement with the state district judge's reason for his conclusion, I nevertheless agree with him, for the reasons discussed below, that petitioner has not satisfied both prongs of the *Strickland* test.

 Petitioner initially argues that his counsel should have called Cha–Cha Swift to testify. According to Ms. Stennis, however, Cha–Cha's testimony would have been that she was asleep on the night of the robbery and that when she awoke petitioner was gone. Cha–Cha's version apparently conflicted with what petitioner had led her to believe Cha–Cha's testimony would be. (*Id.* at 84:21–85:4). She further testified that that is reason why she did not call her to testify. (*Id.* at 108:20–109:4). At the state evidentiary hearing, however, Cha–Cha testified that she was with petitioner about the time of the robbery, but never deemed it relevant to approach the police or Ms. Stennis with this information.

Remembering that this court is bound by the state district court's credibility determination, I find that Ms. Stennis did not render ineffective assistance. Ms. Stennis's stated reason for not calling Cha–Cha to the stand strikes me as precisely the sort of reasoned strategic decision of counsel that is "virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. As such, petitioner's counsel was not constitutionally ineffective for failing to call Cha–Cha to testify.

 With respect to calling Shampagne and Tawaina Swift to testify, I note that this claim was not raised in petitioner's petition for writ of habeas corpus. (*See* filing 1). The petition refers only to counsel's failure to call Cha–Cha to testify; there is no mention of counsel's failure to call Shampagne and Tawaina to testify. As a result, this portion of petitioner's claim may not be addressed by this court. The petition, not briefs or other documents, provides the basis for granting the writ of habeas corpus. *See Neal v. Grammer,* 769 F.Supp. 1523, 1526 (D.Neb.1991), *aff'd,* 975 F.2d 463, 465 (8th Cir.1992); *see also Insurance Co. of the State of Penn. v. Hoffman,* 814 F.Supp. 782, 787 (D.Minn. 1993) (declining to address allegations raised in a brief but not asserted in the amended complaint); *Berry v. Armstrong Rubber Co.,* 780 F.Supp. 1097 (S.D.Miss. 1991) (refusing to consider claim argued in brief but not alleged in any of three amended complaints), *aff'd,* 989 F.2d 822 (5th Cir.1993). I therefore shall not consider whether petitioner's counsel was ineffective for not calling Shampagne and Tawaina Swift to testify.[11]

---

**11.** I find it unlikely, however, that Shampagne and Tawaina could have corroborated petitioner's alibi. Ms. Stennis testified that prior to petitioner's trial, she repeatedly asked petitioner about his whereabouts the night of the robbery to determine whether he had any alibi witnesses; petitioner, however, never once mentioned that he had picked up Shampagne and Tawaina at the time the robbery occurred. It appears that Ms. Stennis did not learn of this information until petitioner testified at trial. (*See* 107:18–108:10). The timing of this disclosure must have made Ms. Stennis skeptical of the veracity of petitioner's testimony. One would think that a person facing a lengthy prison sentence for robbery and use of a weapon to commit a felony, as well as a habitual criminal charge, would have informed his counsel that he had two witnesses who could have verified his whereabouts during the time of the robbery. Inexplicably, however, petitioner failed to tell Ms. Stennis about picking up Shampagne and Tawaina on the night of the robbery. Petitioner also apparently failed to reveal this information to the police officer who interviewed him because the officer's report states that petitioner told him that once he went to Cha–Cha's house, he never left the rest of the night. (Attach. 8, ex. 19 at 8).

Even more incredible is that neither Cha–Cha, Shampagne or Tawaina ever came forward with their information to the police or Ms. Stennis; instead, they waited until several

For the above reasons, I conclude that the state court's conclusion that petitioner's counsel did not render ineffective assistance by not calling Cha–Cha to testify was not "contrary to" Supreme Court precedent. *See Strickland, supra.* Furthermore, I do not find the state court's holding to be an objectively "unreasonable application of" the applicable body of law. *See Matteo,* 171 F.3d at 889–90.

In accordance with the above discussion, I shall recommend that petitioner's petition for writ of habeas corpus be denied in its entirety.

## MOTION TO EXPAND THE RECORD AND REQUEST FOR AN EVIDENTIARY HEARING

Because petitioner filed this petition after the AEDPA was enacted, I must consider the effect of the AEDPA on standards governing evidentiary hearings. Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2) (West Supp.1999).

Here, petitioner asserts that if an evidentiary hearing were held, he would call two witnesses: himself and Ms. Stennis. However, the state court held an evidentiary hearing at which petitioner and Ms. Stennis testified. Thus, before this court can grant petitioner's request, petitioner must satisfy the requirements of § 2254(e)(2). Petitioner has not done so. I therefore shall deny his request for an evidentiary hearing. I shall also deny his request to expand the record.

**IT THEREFORE HEREBY IS ORDERED** that petitioner's motion to expand the record and request for an evidentiary hearing, (filing 16), is denied.

**FURTHER, IT HEREBY IS RECOMMENDED** to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the petition for writ of habeas corpus, (filing 1), be denied in all respects.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

years after petitioner had been convicted to come forward. I simply do not find the version of events put forth by petitioner and his witnesses to be believable. Consequently, even if I did consider this claim, I would conclude that petitioner's counsel did not render ineffective assistance by failing to call Sham-

pagne and Tawaina to testify. *See Cox v. Wyrick,* 642 F.2d 222, 226 (8th Cir.1981) (concluding that where counsel was not provided with information pertaining to the identity of alibi witnesses, his failure to interview them cannot be considered ineffective).