# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-3378

———————————————

Russell J. Fenstermaker

*Petitioner - Appellant*

v.

Kathy Halvorson, Warden, MCF-Faribault

*Respondent - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 15, 2018
Filed: April 3, 2019

——————————

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

——————————

SMITH, Chief Judge.

Russell J. Fenstermaker was tried and convicted in Minnesota state court in January 2013. A couple of months earlier, a jury had been impaneled in the prosecution of the same charge against him, but the state trial court declared a mistrial before the trial actually began. The court found that a mistrial was a manifest necessity because an injury sustained by the prosecutor litigating the case appeared

certain to delay the trial beyond the empaneled jury's term of service. Following his convictions, Fenstermaker appealed, challenging the trial court's denial of his motion to dismiss on double jeopardy grounds. The Minnesota Court of Appeals recognized that Fenstermaker's double jeopardy issue presented a "close case," but it ultimately concluded that the trial court did not abuse its discretion by declaring a mistrial out of manifest necessity. *State v. Fenstermaker*, No. A13-1082, 2014 WL 4290318, at *6 (Minn. Ct. App. Sept. 2, 2014). Fenstermaker petitioned the district court[1] for a writ of habeas corpus. The district court denied the petition, concluding the state court did not unreasonably apply clearly established federal law. Fenstermaker now asks this court to reverse the judgment of the district court and grant the writ. We decline to do so and affirm.

## I. *Background*

The State of Minnesota charged Fenstermaker with first-degree and third-degree sexual assault. His trial was scheduled for Wednesday, November 14, 2012. On that day, a jury was selected and sworn in. Opening arguments were scheduled to start Friday, November 16. On Thursday, November 15, the State requested a continuance until Monday, November 19, because the assigned prosecutor had suffered a back injury and could not proceed with the trial as scheduled. The court granted the continuance.

On Sunday, November 18, a supervising prosecutor notified the court that the assigned prosecutor was still at home, unable to walk, and on medication. The supervising attorney appeared in court on Monday. He reiterated the injured attorney's unavailability and also stated that no other prosecutor in the office had time to prepare for the trial. He emphasized that the assigned prosecutor's relationship

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

with the witnesses and jury were critical to the case proceeding fairly. The State then moved for a mistrial.

The State said it was willing to discuss other options, such as continuing the trial to the following week, as long as the assigned prosecutor could return by then. Fenstermaker's counsel opposed the motion for mistrial but said he was available the following week for a trial. The court then said it would make time for trial the following week, but only if a trial could be certain to begin. Upon reflection, however, the court granted the State's motion for mistrial. The court based its decision on the sudden and severe nature of the prosecutor's injury and the uncertainty of her availability the following week. The court also considered that the injury's occurrence on the eve of trial made it "virtually impossible" for another prosecutor to substitute. Resp. to Pet. for Writ of Habeas Corpus, Addendum Tr. Nov. 19, 2012, at 8, *Fenstermaker v. Halvorson*, No. 16-CV-0363 (D. Minn. Mar. 23, 2016), ECF No. 10-2. The trial court, noting it had been prepared to declare a mistrial sua sponte in light of the circumstances, expressed concern about the possible expiration of the jury's term of service before the case could finish.

Trial was rescheduled and held about two months later with the original prosecutor on January 22, 2013. At trial, Fenstermaker moved to dismiss, arguing that the trial would violate his constitutional right not to be subject to double jeopardy. The court denied the motion. The jury convicted Fenstermaker of the charged crime. On appeal before the Minnesota Court of Appeals, Fenstermaker argued that the trial court abused its discretion because there was no manifest necessity justifying the mistrial. The appeals court disagreed, but it noted that the double jeopardy issue presented a "close case." *Fenstermaker*, 2014 WL 4290318 at *6. Fenstermaker then sought and was denied review by the Minnesota Supreme Court.

After he exhausted his state court appellate opportunities, Fenstermaker filed a petition for writ of habeas corpus with the district court, arguing that the Minnesota

Court of Appeals erred in rejecting his double jeopardy claim. The magistrate judge recommended that the district court deny Fenstermaker's petition. The district court adopted the magistrate judge's report and recommendation, concluding that the Minnesota courts did not unreasonably apply clearly established federal law. Specifically, the district court stated:

> [T]he magistrate judge was correct to find that it was not manifestly unreasonable to conclude that a continuance was an inviable option, given the short time remaining in the jury's term of service, and the complete uncertainty regarding when, if ever, the prosecutor would be available to return to the courtroom.

*Fenstermaker v. Halvorson*, No. 16-CV-363, 2017 WL 3608234, at *4 (D. Minn. Aug. 22, 2017). Finally, the district court granted Fenstermaker a certificate of appealability because "reasonable jurists could debate the outcome of th[e] petition." *Id.* at *5.

## II. *Discussion*

Fenstermaker is entitled to habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) if he can show that the Minnesota Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). Fenstermaker does not argue that the Minnesota Court of Appeals made a decision contrary to clearly established federal law.[2] His argument is that Minnesota's application of that law was unreasonable. The question we must answer then, is whether the Minnesota Court of Appeals' determination that the trial

---

[2]A decision is contrary to federal law if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if it confronted facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result. *See Brown v. Payton*, 544 U.S. 133, 141 (2005).

court did not abuse its discretion in granting a mistrial based on manifest necessity was an unreasonable application of clearly established federal law.

Our review of state court rulings under AEDPA is "highly deferential." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). We will not grant a writ of habeas corpus simply because we independently conclude "that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Instead, Fenstermaker must show that the Minnesota court's mistrial order in his first trial was "objectively unreasonable." *Id.* at 409. "This distinction creates a substantially higher threshold for obtaining relief than *de novo* review." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation omitted). In other words, we must give the Minnesota Court of Appeals the benefit of the doubt unless Fenstermaker makes a showing that its ruling "was so lacking in justification that there [is] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). We presume "state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

A. *Double Jeopardy Implications of Mistrial Ruling*

The "principles of federal law governing [double jeopardy cases] are well established. Under the Fifth and Fourteenth Amendments, a state may not twice place a defendant in jeopardy for the same offense." *Moussa Gouleed v. Wengler*, 589 F.3d 976, 981 (8th Cir. 2009). Constitutional protections against retrial attach when a jury is empaneled and sworn, even before opening statements are made. *See, e.g.*, *Martinez v. Illinois*, 572 U.S. 833, 834 (2014) (per curiam). Fenstermaker's constitutional protections, barring an appropriate mistrial, had kicked in because jeopardy attached when the first jury was empaneled. But "retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused." *Arizona v. Washington*, 434 U.S. 497, 505 (1978). Mistrial may be declared "whenever, in [the trial judge's] opinion, taking all

the circumstances into consideration, there is a manifest necessity" for the mistrial. *United States v. Perez*, 22 U.S. 579, 580 (1824).

The manifest necessity standard has been interpreted over time to mean a "high degree of necessity," not an absolute necessity. *Renico*, 559 U.S. at 774 (internal quotation omitted). The decision to grant a mistrial is reserved to the "broad discretion" of the trial judge handling individual cases. *Illinois v. Somerville*, 410 U.S. 458, 462 (1973). While there is no "mechanical formula" a reviewing court should use, *see id.*, we are particularly concerned with "whether less drastic alternatives were available" to the trial court than declaring a mistrial. *Long v. Humphrey*, 184 F.3d 758, 761 (8th Cir. 1999) (internal quotation omitted).

B. *Minnesota's Application of Federal Law*

We have previously set forth when a state court's adjudication of a claim involves an unreasonable application of clearly established federal law:

> A decision involves an unreasonable application of federal law if the state court correctly identifies the governing legal rule but applies it in an objectively unreasonable manner, unreasonably extends a legal principle to a new factual context where it should not govern, or unreasonably refuses to extend a principle to a context where it should apply.

*Wengler*, 589 F.3d at 980 (cleaned up). In granting a mistrial, "the crucial issue is whether the trial judge deliberately exercised his discretion." *Id.* at 982 (cleaned up). If the judge does not—for example, when he "acts for reasons completely unrelated to the trial problem"—close appellate scrutiny is appropriate. *Washington*, 434 U.S. at 510 n.28.

In this case, the state trial court deliberately exercised its discretion, and the Minnesota Court of Appeals gave deference to its determination, noting that "[t]he

district court is in the best position to determine whether a manifest necessity exists." *Fenstermaker,* 2014 WL 4290318, at *4. In declaring the mistrial, the trial court said:

> First of all, this jury's time of service ends this week, which is Wednesday of this week because of the Thanksgiving holiday. . . . The court was prepared in the absence of such a motion to declare a mistrial sua sponte for a couple of reasons: Number one, those enumerated by the state I think are valid. [The assigned prosecutor] is an experienced trial lawyer. She handles these types of cases. She has established rapport with the alleged victim and the alleged victim's family and also established rapport with the 14 jurors who have been sworn, and I think given the nature of this particular case, and the seriousness of it, that to require the state to have somebody simply jump in at this stage and try the case would not be fair to the State of Minnesota. . . .
>
> I think the high degree standard relative to the manifest necessity is satisfied in this case because [the assigned prosecutor's] back issue arose unexpectedly and suddenly, and she is simply unable to continue, and as I indicated, I think under the circumstances it is virtually impossible for another prosecutor to conduct the trial in this matter, and as I already indicated, I think the impact of a change in the prosecutors would be an unjust burden on the State of Minnesota.

*Id*. at *2 (second and fourth alterations in original). In making this ruling, the trial court plainly expressed its familiarity with the high manifest necessity standard. The court delineated its reasons for declaring a mistrial. Specifically, the trial court highlighted the end of the jury's term of service and the unpredictable return of the prosecutor from an unforeseeable injury on the trial's eve. The court considered these "urgent circumstances" which were impossible to forecast. *Somerville*, 410 U.S. at 461.

At the Monday hearing, the parties discussed alternatives to declaring a mistrial. The court first considered whether the state could utilize a substitute

prosecutor. Reviewing the record, it is clear the trial court weighed this possibility and determined that it was unreasonable. The trial court credited the State's assertion that no alternate prosecutor was sufficiently familiar with the case and that the assigned prosecutor had "rapport with the victim, which . . . is important in a criminal-sexual-conduct case." *Fenstermaker*, 2014 WL 4290318, at \*5. The trial court also noted that the assigned prosecutor was experienced in these types of cases. Additionally, the trial court commented that, were the roles reversed, it would grant a mistrial in favor of the defense.

The trial court considered granting a continuance, but it found that to be an unsatisfactory remedy. The length of the injured prosecutor's incapacity was unknown at the time the court decided the mistrial motion. Fenstermaker points out that she actually returned to the office only a week later, but the court's decision did not have the benefit of this hindsight.

On this record, we conclude that the Minnesota Court of Appeals' decision upholding the trial court's exercise of discretion was not objectively unreasonable. Its conclusion that the trial court did not abuse its discretion by declaring that manifest necessity justified the mistrial grant did not violate Fenstermaker's Fifth and Sixth Amendment rights. Even where

> reasonable jurists might disagree over the best remedy for a trial problem, the trial judge must have the power to declare a mistrial in appropriate cases, for the interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

*Wengler*, 589 F.3d at 984 (cleaned up).

We acknowledge, as the Minnesota Court of Appeals noted, that this case is closer than some, and "[i]n a strict, literal sense, the mistrial was not 'necessary.'" *See Washington*, 434 U.S. at 511. But

> [i]n this context, a 'less drastic alternative' does not mean any conceivable option available to the trial judge. It means a reasonable and satisfactory alternative—a solution to a trial problem which strikes a better balance between "the defendant's interest in proceeding to the verdict" and the "competing and equally legitimate demand for public justice" than would a mistrial.

*See Wengler*, 589 F.3d at 983 (quoting *Somerville*, 410 U.S. at 471). The alternatives discussed were *possible*. But each came with its own set of challenges.

This is an instance where Fenstermaker's right to a complete trial by a particular tribunal was appropriately "subordinated to the public's interest in fair trials designed to end in just judgments." *See Wade v. Hunter*, 336 U.S. 684, 689 (1949).

### III. *Conclusion*

The district court's decision denying Fenstermaker's petition for a writ of habeas corpus is affirmed.

_____