# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3293

_____

Antonio Richardson,

               Appellant,

     v.

Michael Bowersox,

               Appellee.

*
*
*
*
*   Appeal from the United States
*   District Court for the
*   Eastern District of Missouri.
*
*
*

_____

Submitted: May 10, 1999

Filed: August 17, 1999

_____

Before WOLLMAN, Chief Judge, BEAM, and MURPHY, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Antonio Richardson was convicted of murder and sentenced to death in Missouri state court. He appeals from the district court's[1] denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

---

[1]The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

## I.

On the night of April 4, 1991, Richardson, Reginald Clemons, Marlin Gray, and Daniel Winfrey went to the Chain of Rocks Bridge, an abandoned bridge that spans the Mississippi River between Missouri and Illinois, to smoke marijuana. They parked on the Missouri side and walked across to the Illinois side to do the drugs. The marijuana would not light, however, and as they began walking back across the bridge they observed Julie Kerry, age twenty-one, her nineteen-year-old sister Robin Kerry, and the Kerrys' cousin, Thomas Cummins, walking toward the Illinois side.

The groups spoke briefly and then continued on their respective courses towards the opposite ends of the bridge. Upon reaching the Missouri side, Clemons said, "Let's rob them." Gray responded, "Yeah, I feel like hurting somebody." Richardson, Clemons, Gray, and Winfrey then walked back toward the Illinois side and intercepted the Kerrys and Cummins at a bend in the middle of the bridge.

Gray ordered Cummins to the ground, and Richardson and Clemons grabbed the Kerrys. Both girls began screaming and crying, whereupon one of the assailants said, "If you don't stop screaming, I'll throw you off this bridge." Clemons told Winfrey to keep watch over one sister as he and Richardson took turns holding down and raping the other sister. At some point, one of the assailants said, "You stupid bitch, do you want to die?" After they had finished raping her, Richardson led the first sister through a manhole to a concrete pier under the bridge. Clemons and Gray then took turns holding down and raping the second sister as Winfrey kept watch over Cummins.

When they were finished, Clemons ordered the second sister through the same manhole. Gray walked to the Missouri end of the bridge in search of Richardson, unaware that he was under the bridge. Clemons then robbed Cummins and ordered him through the manhole. Clemons then told Winfrey to get Gray and joined Richardson and the others under the bridge. Either Richardson or Clemons then pushed the sisters

from the pier and ordered Cummins to jump into the river seventy feet below. The two then climbed out of the manhole and met Gray and Winfrey near the Missouri end of the bridge. Clemons said, "We pushed them off. Let's go."

After buying cigarettes and food at a gas station, the group returned to a lookout point over the river. As they watched, Gray remarked that the Kerrys and Cummins would "never make it back to shore," and told Clemons that Richardson "was brave for doing that." When they departed, Clemons and Gray warned that they would kill anyone who said anything about the crimes.

Following his plunge into the river, Cummins came to the surface near Julie. She attempted to hold onto him, but he immediately started to go under in the swift current. He let go of her and struggled to shore. After wandering through a deserted part of the city, he came to a highway and was assisted by a passing motorist. He eventually testified against the assailants. Julie's body was found downstream three weeks later. Robin's body has not been found to this day.

Winfrey pleaded guilty to two counts of second-degree murder and agreed to testify against the other assailants in exchange for a recommended thirty-year sentence. Gray and Clemons were convicted of first-degree murder and sentenced to death. See State v. Gray, 887 S.W.2d 369 (Mo.) (en banc), cert. denied, 514 U.S. 1042 (1995); State v. Clemons, 946 S.W.2d 206 (Mo.) (en banc), cert. denied, 118 S. Ct. 416 (1997). Richardson was convicted of first-degree murder for Julie Kerry's death and second-degree murder for Robin Kerry's death. At the penalty phase of Richardson's trial, the jury could not agree on punishment. Pursuant to Missouri law, the court became the sentencer and assessed punishment at death. See Mo. Rev. Stat. § 565.030.4. Richardson's direct appeal and petition for state postconviction relief were denied. See 923 S.W.2d 301 (Mo.) (en banc), cert. denied, 519 U.S. 972 (1996). The district court denied his petition for a writ of habeas corpus, filed on December 3, 1996, and this appeal followed.

## II.

The district court issued a certificate of appealability to address whether it was constitutional error for the court to: (1) strike three venire persons who were biased against the death penalty; (2) admit evidence of remarks made by the other assailants; (3) limit the scope of trial counsel's closing argument; (4) admit the testimony of Stephanie Whitehorn at the penalty phase; and (5) deny Richardson's request to present additional mitigating evidence prior to the assessment of punishment.

We review the district court's findings of fact for clear error and its conclusions of law de novo. See Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998). We apply a presumption of correctness to the state court's findings of fact. See 28 U.S.C. § 2254(e)(1). We may grant the writ only if the state court's adjudication of the claims resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." Id. § 2254(d)(1).

In Long v. Humphrey, No. 98-3409, slip op. (8th Cir. July 14, 1999), we cited with approval the First Circuit's definition of "contrary to," which we summarized as follows: A state court decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case. Id. at 4 (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)). We then adopted the Third Circuit's interpretation of the "unreasonable application" prong of section 2254(d)(1). Under the Third Circuit's holding, "'[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.'" Id. (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999) (en banc), petition for cert. filed, 68 U.S.L.W. 3008 (U.S. June 22, 1999)). In determining whether a state court's decision involved an

-4-

unreasonable application of clearly established federal law, it is appropriate to refer to decisions of the inferior federal courts in factually similar cases. See id. at 5 (citing Matteo, 171 F.3d at 890). Further,"[i]n making this determination, mere disagreement with the state court's conclusions is not enough to warrant habeas relief." Matteo, 171 F.3d at 890 (quoted in London, slip op. at 5). It is with these standards in mind that we consider Richardson's claims.

## A. Guilt Phase Issues

### 1. Voir Dire

Richardson argues that the trial court erred in striking three venire persons who stated that they would not consider imposing the death penalty if the State did not prove that Richardson was the person who pushed the victims off the bridge. The Supreme Court has held that a juror may be stricken for cause if, upon questioning, the judge believes that his views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Adams v. Texas, 448 U.S. 38, 45 (1980). A trial judge's determination that a juror should be stricken is a finding of fact that is entitled to considerable deference under section 2254(e)(1). See Hatley v. Lockhart, 990 F.2d 1070, 1072 (8th Cir. 1993); Swindler v. Lockhart, 885 F.2d 1342, 1345-46 (8th Cir. 1989).

Here, the State was entitled to have the jury consider the death penalty upon a verdict of first-degree murder based on accomplice liability. See Mo. Rev. Stat. § 565.030; cf. Mo. Rev. Stat. § 565.032.3(4) (stating that an accomplice's "relatively minor" participation in the crime is a statutory mitigating factor but not a complete bar to imposing the death penalty). To demonstrate accomplice liability, the State was not required to prove that Richardson himself pushed Julie and Robin Kerry off the bridge. See Jury Instruction No. 6, J.A. at 353. Because the three venire persons at issue in effect stated that they would not follow this instruction, see Trial Tr. at 279 (Cannon);

306 (Pisoni); 311 (Hughes), the trial court did not err in finding that their views would substantially impair their performance as jurors and in striking them from the panel.

## 2. Confrontation Clause

Richardson claims that the Confrontation Clause was violated when the trial court allowed Winfrey to testify that after the killings Gray said that Richardson was "brave for doing that" and that the victims would "never make it back to shore." In addition, he claims that admitting various inculpatory statements of Clemons and Gray was unconstitutional under Bruton v. United States, 391 U.S. 123 (1968).

Assuming, arguendo, that Gray's statements that Richardson was "brave for doing that" and that the victims would "never make it back to shore" were hearsay admitted in violation of the Confrontation Clause, their admission is subject to harmless-error analysis. See Lilly v. Virginia, 119 S. Ct. 1887, 1901 (1999). If the Missouri Supreme Court reviewed for harmless error under the stricter standard of Chapman v. California, 386 U.S. 18 (1967), we may apply the standard of Brecht v. Abrahamson, 507 U.S. 619 (1993). See Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir. 1993). We must proceed under Chapman, however, if the state court did not. Id.

The Missouri Supreme Court reviewed the claim for prejudice and concluded that "the jury's verdict would have been no different if Gray's out-of-court statement had been excluded." Richardson, 923 S.W.2d at 312. Although this may have been sufficient to warrant our applying the more deferential Brecht standard of review, we need not determine this question because admission of the statements was harmless even under Chapman. See Barrett v. Acevedo, 169 F.3d 1155, 1164 (8th Cir. 1999) (en banc) (recognizing that the state court need not explicitly rely on Chapman to warrant federal review under Brecht, but not deciding the issue because the error was

also harmless under <u>Chapman</u>), <u>petition for cert. filed</u>, (U.S. June 7, 1999) (No. 98-9681).

Under <u>Chapman</u>, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. The jury instruction in this case allowed Richardson to be convicted of first-degree murder based solely on accomplice liability. Both Winfrey and Cummins testified that Richardson was under the bridge with Clemons when the victims were pushed. Cummins testified that Richardson ordered the victims to go to the edge of the pier and ordered Cummins to jump. After Clemons and Richardson climbed back onto the bridge, Clemons said to Gray and Winfrey, "We pushed them off." In light of the Missouri law of accomplice liability and the overwhelming evidence of Richardson's involvement in the murders, it can be said with assurance that Gray's statements did not contribute to the jury's finding of guilt. <u>Chapman</u>, 386 U.S. at 24. We conclude, therefore, that any error in admitting Gray's statements was harmless beyond a reasonable doubt.

<u>Bruton</u> prohibits, <u>inter alia</u>, the use at a defendant's trial of inculpatory statements of co-defendants that also implicate the defendant. <u>See</u> <u>Lilly</u>, 119 S. Ct. at 1897 (citing <u>Bruton</u>, 391 U.S. at 136). Such statements are inherently unreliable because a co-defendant "often has a considerable interest in 'confessing and betraying his cocriminals.'" <u>Id.</u> (quoting 5 Wigmore, Evidence § 1477, at 358 n.1). The inculpatory statements of Gray and Clemons implicated only themselves, however, not Richardson. Therefore, they did not violate <u>Bruton</u> but fell within the "firmly rooted" hearsay exception for statements against penal interest. <u>See</u> <u>Lilly</u>, 119 S. Ct. at 1895. Accordingly, the admission of the challenged statements did not violate the Confrontation Clause. <u>See</u> <u>White v. Illinois</u>, 502 U.S. 346, 356 (1992) (holding that statements within a firmly rooted hearsay exception do not violate the Confrontation Clause).

### 3. Closing Argument

Richardson argues that the Sixth and Fourteenth Amendments were violated when the court granted the State's motion in limine restricting his closing argument at trial. He claims that he was precluded from arguing (1) that he was not under the bridge when the victims were pushed, (2) that he was incapable of deliberating on the murders, and (3) that he did not participate in the murders. Although Richardson did not object to the court's ruling during the trial, the Missouri Supreme Court reviewed the claim for plain error on direct appeal. See Richardson, 923 S.W.2d at 314-15. Therefore, we also review for plain error, granting relief "only if there is manifest injustice." Roberts v. Bowersox, 137 F.3d 1062, 1064 (8th Cir. 1998), cert. denied, 119 S. Ct. 808 (1999).

A trial court may not prohibit all closing argument but has "broad discretion" in limiting its scope. See Herring v. New York, 422 U.S. 853, 862 (1975). Closing arguments may be "limited to the facts in evidence and reasonable inferences flowing therefrom." United States v. Ojala, 544 F.2d 940, 946 (8th Cir. 1976). Courts may prohibit arguments that "misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury." United States v. Sawyer, 443 F.2d 712, 713-14 (D.C. Cir. 1971) (footnotes omitted).

Here, there was no evidence from which the jury could have inferred that Richardson was not under the bridge when the victims were pushed. Nor did Richardson introduce evidence that he was mentally incapable of deliberation. Therefore, the trial court did not plainly err in prohibiting Richardson from so contending in his closing argument.

Further, Richardson was allowed to argue extensively during closing argument that he did not participate in the actual pushing of the victims. See Trial Tr. at 2015-30 (arguing that Gray was also under the bridge and that Gray pushed the victims).

Accordingly, even if it was error to grant the State's motion on this ground, Richardson did not suffer manifest injustice as a result.

## B. Penalty Phase Issues

### 1. Character Evidence

Next, Richardson challenges on due process grounds the trial court's admission of Stephanie Whitehorn's penalty-phase testimony that Richardson mouthed the words "I'm going to get you" to her during her testimony at the guilt phase.

An erroneous state-court evidentiary ruling violates the Due Process Clause only if it is "'gross, conspicuously prejudicial or of such import that the trial was fatally infected.'" Redding v. Minnesota, 881 F.2d 575, 579 (8th Cir. 1989) (quoting Rhodes v. Foster, 682 F.2d 711, 714 (8th Cir. 1982)). In other words, Richardson "must show 'a reasonable probability that the error affected the trial's outcome.'" Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996) (quoting Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995)).

"[A] wide scope of evidence and argument is admissible during the penalty phase of a capital murder trial, provided that such evidence is not 'constitutionally impermissible or totally irrelevant to the sentencing process.'" Gilmore v. Armontrout, 861 F.2d 1061, 1073 (8th Cir. 1988) (quoting Zant v. Stephens, 462 U.S. 862, 885 (1983)). Here, the trial court determined that the relevance of Whitehorn's testimony outweighed its prejudicial effect. We cannot say that this determination constituted error, much less error that was so prejudicial as to fatally infect the outcome of the trial.

Richardson also contends that the court violated the Sixth Amendment by not allowing him to present the testimony of his guilt-phase counsel that she did not see Richardson threaten Whitehorn. The Sixth Amendment does not guarantee, however,

that criminal defendants may call every witness they choose.  See United States v. Scheffer, 118 S. Ct. 1261, 1264 (1998) (holding that a "defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions").  A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  Taylor v. Illinois, 484 U.S. 400, 410 (1988).  The trial court found that counsel's testimony was inadmissible because she admitted that she was taking notes during Whitehorn's testimony and watched Richardson only periodically.  Because nothing in the record leads us to question this finding, we conclude that the court did not violate the Sixth Amendment by excluding the testimony.

## 2.  Additional Mitigating Evidence

At the penalty phase, Richardson's counsel did not present the testimony of Dr. Eric Engum, a neuropsychologist, who stated in his report that Richardson suffered from an "unspecified non-psychotic mental disorder following organic brain damage." Petition for Writ of Habeas Corpus, J.A. at 99.  Counsel believed that Dr. Engum's testimony would be more harmful than helpful because his report also concluded that Richardson's mood appeared "flattened, detached, and dulled" and that Richardson had reduced "frustration tolerance" and increased irritability when faced with difficult tasks. Id., J.A. at 94.  When the trial court  became the sentencer, however, Richardson wished to introduce Dr. Engum's testimony because he believed that the court would not lend undue weight to the prejudicial portions of the report.  The court denied Richardson's request and recommended a sentence of death based on the mitigating and aggravating evidence presented to the jury.  It then agreed to hear Dr. Engum's testimony before it formally entered the sentence.  Richardson claims that the court's refusal to hear the evidence before recommending sentence violated his right to due process.

-10-

The Missouri capital sentencing statute requires that defendants be allowed to present mitigating evidence to the jury at a penalty-phase hearing following the determination of guilt. See Mo. Rev. Stat. § 565.030.4. If the jury cannot agree on punishment, the court becomes the sentencer. See id. The statute requires the court to follow the same procedure that the jury follows before assessing punishment. Id. Richardson contends that the statute thus requires the court to hold a second penalty-phase hearing because such a hearing is part of the procedure required of the jury under the statute. The Missouri Supreme Court declined to address the statutory argument, holding that Richardson was not prejudiced by the lack of a second penalty-phase hearing because the court considered the evidence before it formally entered the sentence. See Richardson, 923 S.W.2d at 324. This holding on a matter of state evidentiary law is not grounds for federal habeas relief unless it was so unfair as to constitute a denial of due process. See Mercer v. Armontrout, 844 F.2d 582, 587 (8th Cir. 1988). Likewise, even if the Missouri statute requires a full-dress second penalty-phase hearing in the circumstances presented by Richardson's case, any error of state law in failing to accord Richardson such a hearing would not constitute the automatic equivalent of a violation of the federal constitution. See Chambers v. Armontrout, 157 F.3d 560, 564-65 (8th Cir. 1998). Nor would the fact that the error of state law, even though occurring during the sentencing phase of a capital case, necessarily give rise to a claim under the Due Process Clause of the Fourteen Amendment. See id. See also Barclay v. Florida, 463 U.S. 939, 957-58 (1983) (plurality opinion).

Clearly established federal law holds that states may not "preclude the sentencer from considering any mitigating factor." Eddings v. Oklahoma, 455 U.S. 104, 113-14 (1982) (citing Lockett v. Ohio, 438 U.S. 586 (1978)). Nor may the sentencer "refuse to consider, as a matter of law, any relevant mitigating evidence." Id. at 114. It is not sufficient to allow defendants to present mitigating evidence; the sentencer "must also be able to consider and give effect to that evidence in imposing sentence." Penry v. Lynaugh, 492 U.S. 302, 319 (1989).

-11-

These cases establish that defendants must have an opportunity to present, and sentencers must consider, mitigating evidence. They cannot, however, fairly be said to require that states give defendants a second opportunity to present mitigating evidence in the event the trial court replaces the jury as sentencer. Accordingly, the Missouri Supreme Court's refusal to address and accept Richardson's statutory argument did not constitute a decision that was "contrary to" clearly established federal law.

The question then becomes whether the decision "involved an unreasonable application of" clearly established federal law. In making this determination, we look to relevant decisions of the Supreme Court and lower federal courts. Although Richardson argues that the trial court's decision not to conduct a second penalty-phase hearing was an unreasonable application of the holdings in Eddings and Penry, he has not called to our attention any cases that have interpreted Eddings and Penry to require states to provide a second opportunity to present mitigating evidence in those cases in which the trial court replaces the jury as sentencer. Richardson had a full opportunity to present mitigating evidence to the jury. When the trial court became the sentencer, it considered all of the evidence that Richardson had presented in mitigation. Accordingly, we cannot say that the Missouri Supreme Court's decision not to address and accept Richardson's statutory argument constituted an unreasonable application of the law set forth in Eddings and Penry.

### III.

Richardson raises additional claims that were not included in the certificate of appealability. We do not consider such claims in light of our holding that "appellate review is limited to the issues specified in the certificate of appealability." Carter v. Hopkins, 151 F.3d 872, 874 (8th Cir.), cert. denied, 119 S. Ct. 524 (1998). See also Ramsey v. Bowersox, 149 F.3d 749 (8th Cir. 1998).

The order dismissing the petition is affirmed.

A true copy.

     Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.