# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-3542/01-3543

_____

Stanley Hall,                              *
                                           *
    Appellee/Cross-Appellant,      *
                                           *    Appeals from the United States
v.                                         *    District Court for the
                                           *    Eastern District of Missouri.
Al Luebbers, Superintendent, Missouri      *
State Correctional Facility at Potosi;     *
Jeremiah W. (Jay) Nixon, Attorney          *
General of the State of Missouri,          *
                                           *
    Appellants/Cross-Appellees.    *

_____

Submitted: November 5, 2002

Filed: September 2, 2003

_____

Before HANSEN,[1] Chief Judge, BEAM and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

A jury convicted Stanley Hall (Hall) of first degree murder and assessed the death penalty as punishment. After the Missouri Supreme Court affirmed Hall's

---

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

conviction, sentence, and denial of post-conviction relief, Hall petitioned the United States District Court for the Eastern District of Missouri for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). The district court[2] held the State of Missouri (State or Missouri) had not opted-in for expedited habeas review and denied Hall's petition. Missouri appeals, and Hall cross-appeals. We affirm.

## I.    BACKGROUND

### A.    Factual Background

In January 1994, Hall and Rance Burton (Burton) drove to the South County Shopping Center in St. Louis, Missouri. Searching the parking lot for a vehicle to steal, Hall and Burton approached Barbara Jo Wood's (Wood) car as it entered the parking lot. At gunpoint, Hall and Burton forced Wood into the passenger side of her car. Hall and Burton then drove Wood's car to the McKinley Bridge. Stopping on the McKinley Bridge, Hall or Burton forced Wood out of her car. A struggle ensued, during which Wood suffered some injuries. Burton then returned to Wood's car and sped away, leaving Hall and Wood on the bridge. Hall lifted Wood over the bridge railing. Pleading for her life, Wood held onto Hall. Struggling, Hall hurled Wood off the bridge and into the frigid Mississippi River where she died. Two witnesses reported the incident. The police arrived and arrested Hall. After waiving his Miranda rights, Hall confessed to throwing Wood into the river.

### B.    Procedural Background

A jury convicted Hall of kidnaping, two counts of armed criminal action, robbery in the first degree, and murder in the first degree. After the presentation of penalty-phase evidence, the jury found six aggravating factors and recommended capital punishment. The trial court accepted the jury's recommendation and sentenced Hall to death. Hall appealed his conviction and sentence to the Missouri

---

[2]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

Supreme Court, which affirmed. See State v. Hall, 955 S.W.2d 198, 211 (Mo. 1997). Hall filed for post-conviction relief, raising numerous ineffective assistance of counsel claims. The Missouri post-conviction court denied Hall relief. Hall appealed three ineffective assistance of counsel claims to the Missouri Supreme Court. The Missouri Supreme Court affirmed. See Hall v. State, 16 S.W.3d 582, 588 (Mo. 2000).

Having exhausted his state court remedies, Hall filed an affidavit to proceed *in forma pauperis* and requested appointment of counsel to pursue section 2254 relief. After the district court appointed counsel, the district court promulgated a case management order establishing December 15, 2000, as the date by which Hall must file his section 2254 petition. Missouri moved to amend the case management order, claiming the State had opted-in for expedited review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Based upon AEDPA's expedited review standard, Missouri asserted Hall must file his habeas petition by August 31, 2000. The district court denied Missouri's motion, holding the court need not determine if the State had opted-in. Missouri urged the district court to reconsider its decision. The district court reconsidered its decision, holding the State had not opted-in under AEDPA, because Missouri Rule of Criminal Procedure 29.16 (Rule 29.16) did not satisfy AEDPA's requirements that counsel be offered to all individuals under a capital sentence, and counsel be provided compensation and payment of litigation expenses. Missouri appeals.

Hall filed a habeas petition, asserting fourteen grounds for granting section 2254 relief, including four ineffective assistance of counsel claims. The district court denied Hall relief, but granted a certificate of appealability on all grounds. Hall cross-appeals.

## II.    DISCUSSION

### A.    AEDPA Opt-In

Missouri asserts Hall untimely filed his habeas petition because the State opted-in for expedited habeas corpus review. Whether a state has adopted a post-conviction appointment of counsel mechanism satisfying AEDPA's opt-in requirements is a question of law, which we review de novo. Spears v. Stewart, 283 F.3d 992, 1008 (9th Cir. 2002). Under AEDPA's expedited review provisions, an individual under a capital sentence must file a section 2254 petition within 180 days "after final State court affirmance of the conviction and sentence on direct review." 28 U.S.C. § 2263(a). To permit this expedited review, Missouri must adopt an appointment mechanism that complies with AEDPA's opt-in requirements. See 28 U.S.C. § 2261(a)-(c). Missouri bears the burden of establishing Rule 29.16 complies with AEDPA's opt-in requirements. See Spears, 283 F.3d at 1012.

Subsection (b) and subsection (c) of section 2261 establish the requirements a state must meet to opt-in for expedited habeas review.[3] Subsection (b) establishes

---

[3]Section 2261 (b) and (c) provide

(b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the *appointment, compensation, and payment of reasonable litigation expenses of competent counsel* in State post-conviction proceedings brought by *indigent prisoners* whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

(c) Any mechanism for the appointment, compensation, and reimbursement of counsel as provided in subsection (b) *must offer counsel to all State prisoners under capital sentence* and must provide for the entry of an order by a court of record–

the general requirement that a state must create by statute, rule of the state's highest court, or by an agency authorized by law a "mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in . . . post-conviction proceedings brought by indigent prisoners."  28 U.S.C. § 2261(b).

Subsection (c) further defines the mechanics of the post-conviction mechanism. In subsection (c), Congress, for the first time, uses two phrases "offer" and "all State prisoners."  28 U.S.C. § 2261(c).  Subsection (c) specifies the mechanism must contain two components, an offer component and an appointment component.  To satisfy the offer component, the mechanism must offer counsel to *all* prisoners under a capital sentence.  Although subsection (c) requires an offer of counsel to *all* prisoners under a capital sentence, subsection (c)'s appointment component requires counsel be appointed only to indigent prisoners.

Missouri's post-conviction appointment mechanism for prisoners under a capital sentence fails to satisfy AEDPA's offer component, i.e., counsel must be offered to *all* prisoners under a capital sentence.  Rule 29.16 provides

---

(1) *appointing* one or more counsels to represent the prisoner upon a finding that *the prisoner is indigent* and *accepted the offer* or is unable competently to decide whether to accept or reject the offer;

(2) finding, after a hearing if necessary, that the prisoner *rejected the offer* of counsel and made the decision with an understanding of its legal consequences; or

(3) *denying the appointment of counsel* upon a finding that *the prisoner is not indigent*.

28 U.S.C. § 2261 (b)-(c) (emphasis added).

-5-

When a motion is filed as provided in Rule 29.15 to set aside a sentence of death, the court shall find on the record whether the movant is indigent. If the movant is indigent, the court shall cause to be appointed two counsel [sic] to represent the movant.

Mo. R. Crim. P. 29.16(a). According to its plain text, Rule 29.16 only offers the appointment of counsel to indigent prisoners under a capital sentence who file a petition for post-conviction relief, not all prisoners under a capital sentence, as required by AEDPA. Section 2261(c) demands an affirmative and automatic "offer" of counsel to all persons under a capital sentence. Missouri's procedure waits until a Rule 29.15 post-conviction relief motion is filed and indigency is determined. Professional legal advice may be critical in the early post-conviction relief decision-making process and the preparation of a Rule 29.15 motion.

During oral argument, Missouri asserted the State satisfies AEDPA's opt-in requirements because, pursuant to Missouri Rule of Criminal Procedure Rule 29.07 (Rule 29.07), the sentencing court informs each person convicted of a capital sentence he is entitled to pursue post-conviction relief under Rule 29.15, and the text of Rule 29.15, in subsection (e), informs the prisoner of the right to appointed post-conviction counsel for indigents. Rule 29.07(b)(4) does require the sentencing court to inform the defendant of the right to pursue post-conviction relief under Rule 29.15. But, Rule 29.15(e) only offers counsel to defendants who file for post-conviction relief. Rule 29.07(b)(4) with Rule 29.15(e) still suffer from the same infirmity as does Rule 29.16, i.e., no affirmative offer of counsel is made to all prisoners under capital sentence.

Because we conclude Rule 29.16 does not satisfy AEDPA's second opt-in requirement, we decline to address Rule 29.16's compliance with the remaining opt-in requirements.

## B.     Merits of Hall's Section 2254 Petition

In an appeal of a habeas petition, "[w]e review the district court's findings of fact for clear error and its conclusions of law de novo." Taylor v. Bowersox, 329 F.3d 963, 968 (8th Cir. 2003). We will grant section 2254 relief only if the state court's adjudication results "in a decision that [is] contrary to, or involv[es] an unreasonable application of, clearly established Federal law" or "in a decision that [is] based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2); see also Poole v. Goodno, 335 F.3d 705, 708 (8th Cir. 2003). The state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). Hall asserts fourteen claims on which he seeks habeas relief.

### 1.     Batson Claims

Hall, a black male, asserts Missouri struck two prospective black jurors, Vergia Dunbar (Dunbar) and Vandaris Simpson (Simpson), which violated his equal protection rights. The Supreme Court has adopted a three-part test "to determine whether a peremptory strike violates the Equal Protection Clause." U.S. Xpress Enter., Inc. v. J.B. Hunt Transp., Inc., 320 F.3d 809, 812 (8th Cir. 2003) (citing Batson v. Kentucky, 476 U.S. 79, 96-98 (1986)). First, Hall must establish a prima facie case showing the prosecutor racially discriminated in exercising one or more peremptory challenges. Batson, 476 U.S. at 96; Weaver v. Bowersox, 241 F.3d 1024, 1028 n.1 (8th Cir. 2001). To establish prima facie race discrimination, Hall must establish the voir dire supports an inference of discriminatory purpose in the prosecutor's exclusion of a juror through a race-based peremptory challenge. See Powers v. Ohio, 499 U.S. 400, 411-16 (1991) (clarifying Batson). Second, if Hall makes a prima facie showing, Missouri must offer a racially neutral explanation for the challenges. Batson, 476 U.S. at 97; Weaver, 241 F.3d at 1028 n.1. Missouri's explanation need not justify a challenge for cause, Batson, 476 U.S. at 97, or be "persuasive, or even plausible," U.S. Xpress, 320 F.3d at 813 (citations omitted).

Third, the trial court must decide whether Hall has established purposeful discrimination. Batson, 476 U.S. at 98; Weaver, 241 F.3d at 1028 n.1. Each step of the Batson inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence. Weaver, 241 F.3d at 1030; see also 28 U.S.C. § 2254(e)(1).

The trial court denied Hall's Batson challenge regarding Dunbar, finding Missouri proffered racially neutral reasons for the strike and Hall did not establish purposeful discrimination. Missouri stated it struck Dunbar because Dunbar showed a preference for life without parole as a punishment, Dunbar was sleeping during voir dire, and she was a retired social worker. Although the record does not clearly establish Dunbar had a definite preference for life without parole, Dunbar's responses could be interpreted as preferring life without parole over death as punishment.[4] Hall also challenges Missouri's assertion Dunbar was sleeping during voir dire. Two public defender interns testified Dunbar was not sleeping when they observed her. One intern testified he observed a prospective white juror sleeping. Hall's counsel also noted Missouri did not strike a prospective white juror who was sleeping. While Hall arguably demonstrates Missouri did not strike prospective white jurors who slept

---

[4]During voir dire, Hall's counsel and Dunbar engaged in the following discussion:

Q.     And for that crime of first degree murder if you found somebody guilty of that crime and the state in the second part proved all of the things they had to prove, could you still give realistic and meaningful consideration to a sentence of life without parole?
A.     Yes, I could.
Q.     And do you, as we sit here now, have a preference from [sic] the crime that most serious crime of first degree murder for the death penalty versus life without parole?
A.     I don't know whether I would say I have a preference, but if the sentence is, you know, life without parole I could support it.

during voir dire, Hall fails to establish these prospective white jurors also had a possible preference for life without parole. Occupation is a permissible reason to defend against a <u>Batson</u> challenge, and being a social worker could be a legitimate basis to strike a prospective juror. <u>Evans v. Smith</u>, 220 F.3d 306, 314-16 (4th Cir. 2000) (finding the petitioner failed to overcome the presumption of correctness where the prosecutor proffered a juror's occupation, *inter alia*, as a basis for striking the juror); <u>United States v. Griffin</u>, 194 F.3d 808, 825 (7th Cir. 1999) (noting a juror's occupation is a legitimate, race-neutral basis on which to strike a juror). Hall's <u>Batson</u> challenge fails to overcome the presumption of correctness with clear and convincing evidence.

The trial court also found Missouri's reasons for striking Simpson were racially neutral and Hall failed to demonstrate purposeful discrimination. Missouri asserts it struck Simpson because of, *inter alia*, his answers to death penalty questions and his indication he would hold the State to a higher burden of proof. Hall contends the record does not support Missouri's contention Simpson was equivocal about the death penalty. Hall also asserts another prospective white juror, Virginia Kilmer (Kilmer), who was not struck by Missouri, stated she would hold the State to a higher level of proof.

When answering questions on the death penalty, Simpson conceded he had difficulty physically disciplining his son. Simpson also indicated he would have difficulty imposing the death penalty and likened the death penalty to abortion, concluding "in that same vane [sic] taking a life is taking a life . . . . I would have a problem." For that reason, Simpson said he would choose life without parole. Hall has not specifically identified an impaneled white juror who held Simpson's views on the death penalty.

Simpson indicated on five occasions Missouri would have to prove Hall committed the crime "beyond a shadow of a doubt." Hall asserts Kilmer would have

held Missouri to a similarly high burden. Our review of Kilmer's voir dire indicates she would not have held Missouri to a higher burden of proof. While Kilmer used the phrase "beyond a shadow of a doubt" twice to describe Missouri's burden of proof, Kilmer repeatedly professed, in the same answer, she would always follow the judge's instructions and the law regardless of her beliefs on the appropriate burden of proof. Additionally, Hall does not assert Kilmer held views similar to Simpson on the death penalty. Because Hall has not identified an impaneled white juror who held views similar to Simpson on the death penalty and would have held Missouri to a higher level of proof, Hall fails to overcome the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

### 2.    Challenge for Cause

Hall contends the trial court's dismissal for cause of venire panel members Zereta Washington (Washington) and Joann Kurland (Kurland) violated Hall's constitutional rights. A trial court appropriately excludes a prospective juror in a death penalty case when the juror's views "prevent or substantially impair the performance of [the juror's] duties." Adams v. Texas, 448 U.S. 38, 45 (1980). A trial court's exclusion of a prospective juror based on her views is a finding of fact entitled to considerable deference unless overcome by clear and convincing evidence. Richardson v. Bowersox, 188 F.3d 973, 978 (8th Cir. 1999) (citations omitted); see 28 U.S.C. § 2254(e)(1).

Besides excusing Washington for her views on the death penalty, the trial court dismissed Washington for hardship, a finding Hall does not challenge. After being informed the jury would need to be sequestered, Washington stated sequestration would pose a problem because she alone takes care of her ten-year old son and a brother with schizophrenia. The trial court's decision to excuse Washington from the jury based on hardship does not result in a decision contrary to clearly established federal law. As an unchallenged alternative ground existed, we decline to address

whether Washington's personal views on the death penalty would have prevented or substantially impaired her performance as a juror.

The record supports the trial court's dismissal of Kurland for cause. Hall presents a small portion of Kurland's testimony to support his assertion Kurland's views would not have prevented or substantially impaired her duties as a juror. Our review of the record reveals Kurland stated at least ten times she could not consider the death penalty as punishment. Hall fails to present clear and convincing evidence establishing Kurland's views would not have prevented or substantially impaired her duties as a juror. See 28 U.S.C. § 2254(e)(1).

### 3. Enforcement of Plea Agreement

Hall asserts the trial court's failure to enforce his alleged oral plea agreement warrants habeas relief. Under the agreement, the State would recommend a sentence of life imprisonment in exchange for Hall's guilty plea. Hall, 955 S.W.2d at 202. Missouri conditioned the plea agreement on Hall passing a polygraph exam and providing a complete and truthful account of Wood's murder. Pursuant to the plea agreement, Hall took a polygraph exam, but the results were inconclusive. Hall later arranged to take another polygraph exam with a retired Missouri State Highway Patrol officer, which Hall passed.

Hall argues his account of the crime given during the polygraph examination, in reliance on the plea agreement, mandates specific performance of the agreement. We consider three factors in considering a defendant's demand to specifically enforce a plea agreement after the defendant has pled guilty: "(1) the possible prejudice to the defendant, (2) the conduct of the government, and (3) the public interest." Margalli-Olvera v. INS, 43 F.3d 345, 355 (8th Cir. 1994); see Bailey v. Minnesota, 966 F.2d 372, 374 (8th Cir. 1992). Assuming *arguendo* the same analysis applies to the specific performance of an agreement before the defendant pleads guilty, specific performance of Hall's plea agreement is not warranted, because Hall fails to establish

he has suffered any prejudice from the polygraph confession. A year before the polygraph exam, Hall confessed to law enforcement he murdered Wood. The Missouri Supreme Court found the contents of Hall's confession pursuant to the plea agreement and his prior confession did not differ, a finding on which Hall provides no contrary evidence.[5] Hall, 955 S.W.2d at 202-03. The State did not seek to introduce the polygraph confession during Hall's trial. By pleading not guilty and not changing his plea, Hall was also afforded the constitutional protections of a jury trial, the presumption of innocence, and confrontation of the witnesses presented before him. Further, we question whether Hall satisfied the conditions of the plea agreement, because the initial polygraph results were inconclusive.

Although we entertain Hall's contention that specific performance is an appropriate remedy, if the defendant has suffered prejudice, we are not convinced the Constitution would mandate such a remedy except in extreme circumstances. A defendant has no absolute right to have a trial court accept his guilty plea. Santobello v. New York, 404 U.S. 257, 262 (1971) (citing Lynch v. Overholser, 365 U.S. 705, 719 (1962); Fed. R. Crim. P. 11). "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution." Mabry v. Johnson, 467 U.S. 504, 507-08 (1984). If the defendant has not pled guilty or the trial court has not accepted a plea and entered judgment, the defendant has not been deprived of his constitutional rights.

---

[5]Hall contends these findings by the Missouri Supreme Court are not entitled a presumption of correctness, because the trial court did not hold a hearing on the motion to enforce the plea agreement. Hall contends he is entitled to an evidentiary hearing. However, an evidentiary hearing is not necessary, because the trial court and the Missouri Supreme Court assumed the allegations in Hall's motion to enforce the plea agreement were true.

## 4.    Penalty-Phase Closing Argument

Hall asserts three comments made during Missouri's penalty-phase closing argument violated Hall's constitutional rights.  A prosecutor's argument violates due process if the prosecutor's remarks "infected the trial with unfairness."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted); Sublett v. Dormire, 217 F.3d 598, 600 (8th Cir. 2000).  To determine if the prosecutor's remarks infected the trial with unfairness, we must

> (1) measure the type of prejudice that arose from the argument; (2) examine what defense counsel did in his argument to minimize prejudice; (3) review jury instructions to see if the jury was properly instructed; and (4) determine if there is a reasonable probability that the outcome of the sentencing phase would have been different, taking into account all the aggravating and mitigating circumstances.

Antwine v. Delo, 54 F.3d 1357, 1363 (8th Cir. 1995) (citing Newlon v. Armontrout, 885 F.3d 1328, 1337 n.10 (8th Cir. 1989)).  This court will grant habeas relief only if the state's "closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial."  Sublett, 217 F.3d at 600 (quoting James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)).

First, Hall attacks the prosecutor's comparison of the prosecutor's own childhood decision to put a dog to sleep to the jury's decision to impose the death penalty.  Hall claims the comparison violated his due process rights.  Although the argument was irrelevant, unnecessary, and improper, the remarks did not so infect Hall's trial with unfairness as to violate his constitutional right to a fair trial.  Assuming *arguendo* Hall was prejudiced by the prosecutor's remarks, the remaining Antwine factors establish Hall's due process rights were not violated.  Hall's counsel minimized any prejudice by repeatedly reminding the jury Hall is a human being, "a human life, not a dog to be put to sleep."  The jury instructions mitigated any prejudice by instructing the jury that the prosecutor's statements are not evidence and

the deliberations must be based on the evidence. Finally, absent the comparison, no reasonable probability exists that the outcome of the sentence would have been different, because the jury found beyond a reasonable doubt all six aggravating death penalty factors.

Second, during the penalty-phase closing arguments, the prosecutor remarked, "Not every murder First Degree case is a case that meets the legal requirements for the death penalty. This case has met all six legal requirements for the death penalty. Every one." Hall cites Newlon, 885 F.2d at 1338, where we held a prosecutor's closing argument violated due process. In Newlon, the prosecutor argued Newlon "deserved the death penalty more than any other in ten years," emphasized his authority as the highest prosecuting attorney in the county, expressed his personal belief in the propriety of the death penalty, compared Newlon to infamous mass-murderers, appealed to the jurors' fears and emotions, and said "kill him now. Kill him now." Id. at 1335-36. Unlike Newlon, the prosecutor in Hall's case did not intimate Hall deserved the death penalty more than any other defendant, did not emphasize his position of power, did not compare Hall to infamous mass-murders, and did not harangue the jury with an inflammatory appeal to the jurors' personal fears. The prosecutor properly argued Hall's case met all six aggravating factors warranting a sentence of death.

Third, the prosecutor commented the victim did not have a lawyer to represent her, or a jury to decide her fate and before whom to plead for mercy. Prosecutorial comments made during closing argument related to a defendant exercising his constitutional rights may violate due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see, e.g., Griffin v. California, 380 U.S. 609, 615 (1965) (holding a prosecutor may not comment on a defendant's silence). Here, the prosecutor commented on the process Hall afforded the victim–not on Hall's rights to legal counsel and to a jury trial. Hall also fails to establish how he was prejudiced by the remarks.

### 5.      Exclusion of Penalty-Phase Evidence

Hall asserts the trial court violated his Eighth and Fourteenth Amendment rights by excluding evidence of Hall's willingness to plead guilty and the results of his polygraph exam conducted by a Missouri State Highway Patrol officer.  Hall contends this character evidence showed he was willing to accept responsibility. "[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character . . . the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978).  In certain cases, the need and reliability of the evidence mandates the evidence be admitted in the punishment phase, notwithstanding an exclusionary rule.  See Green v. Georgia, 442 U.S. 95, 97 (1979) (holding exculpatory statements by a third party should have been admitted in the punishment phase, notwithstanding the hearsay rule).  Even if Lockett and Green mandated that the trial court admit the above evidence, the exclusion of the evidence was harmless beyond a reasonable doubt.  See Sweet v. Delo, 125 F.3d 1144, 1158-59 (8th Cir. 1997) (noting harmless error must be beyond reasonable doubt).  The jury was provided with evidence of Hall's willingness to accept responsibility.  The jury heard testimony Hall confessed to the police he murdered Wood, and repeated the confession for the police to record.  The jury heard testimony establishing Hall aided law enforcement by taking them to the scene of Wood's abduction, and providing details of the crime.  Additionally, the jury heard testimony indicating Hall expressed sorrow for the killing, and indirectly offered condolences to Wood's family.

Hall also claims the trial court violated his Eighth and Fourteenth Amendment rights by excluding Dr. Eric Engum's (Engum) testimony about the contents of a police report.  Engum opined Hall operated "under extreme duress or substantial dominion of another person, and [Hall's] capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." Hall, 955 S.W.2d at 207.  In an offer of proof, Hall demonstrated Engum

would have testified the police report contained the following information: (1) blood was found on the bridge railing; (2) the hijacked car was abandoned the day after Wood was murdered, and the car was torched by an unidentified black male six days after the murder; (3) Burton smelled of gasoline when the police interrogated him fourteen hours after the car was torched; and (4) when the police asked Burton to take a gun powder paraffin test, Burton volunteered he fired a gun the Thursday before Wood was murdered. Hall fails to establish how Engum's testimony mitigates against the sentence imposed. Absent a link between the evidence and a mitigating factor, any claimed error is harmless beyond a reasonable doubt.

### 6.     Reference to Cassidy Senter

Hall argues the prosecutor improperly elicited testimony from Engum that Engum testified for Thomas Brooks–the person convicted of the highly publicized murder of Cassidy Senter. Hall claims the trial court's failure to grant Hall's request for a mistrial after the prosecutor elicited this testimony warrants habeas relief. "[T]he relevant inquiry is whether the prosecutor's question 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Alexander v. Armontrout, 985 F.2d 976, 978 (8th Cir. 1993) (citations omitted).

After asking Engum how many times he has testified in Missouri capital murder cases, the prosecutor elicited the following testimony:

> Engum:      I want to say this is my third.
> Prosecutor: Okay.
> Engum:      It could be four, but I think this is three. I can think of Robert Hampton, Antonio Richardson, and a gentleman by the name of Brooks.
> Prosecutor: Thomas Brooks?
> Engum:      Thomas Brooks, yes.
> Prosecutor: Killed Cassidy Center [sic]?
> Engum:      Yes.

After this exchange, Hall's counsel objected and moved for a mistrial. The trial court sustained the objection, but denied the motion for a mistrial, finding "no adverse inference from the doctor testifying in [Hall's] case if he has testified that he testifies on behalf of the defendants in trial and post-conviction relief cases." Engum's response only linked Engum to Thomas Brooks and did not associate Hall with Thomas Brooks. This distinguishes <u>Newlon</u> where the prosecutor compared the defendant to infamous mass-murderers. <u>See</u> <u>Newlon</u>, 885 F.2d at 1335-36. We conclude the questioning did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process."

### 7. Constitutionality of Aggravating Factors

Hall challenges three of the six aggravating factors presented in the penalty-phase jury instructions. Hall contends the jury instruction relating to the depravity of mind aggravating factor is unconstitutionally vague. <u>See</u> <u>Battle v. Delo</u>, 19 F.3d 1547, 1562 (8th Cir. 1994). Hall also argues (1) the receipt of money or valuables aggravating factor and (2) the perpetration of a robbery aggravating factor do not guide or focus a jury's consideration of the death penalty. <u>See</u> <u>Jurek v. Texas</u>, 428 U.S. 262, 273-74 (1976). A state law imposing the death penalty must avoid the arbitrary and capricious application of that penalty. <u>Battle</u>, 19 F.3d at 1562. The law must provide clear and objective standards to aid the jury in determining which cases deserve the death penalty. <u>Id.</u> The law must "guide[] and focus[] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death." <u>Jurek</u>, 428 U.S. at 273-74.

Assuming *arguendo* these jury instructions violate the Eighth Amendment, such error is harmless. Missouri is a nonweighing state, meaning only one aggravating factor need be found beyond a reasonable doubt to impose the death penalty. <u>Tokar v. Bowersox</u>, 198 F.3d 1039, 1051 (8th Cir. 1999). Here, the jury

-17-

found six aggravating factors beyond a reasonable doubt. Removing three of the aggravating factors leaves more than enough factors to sustain the death sentence.

### 8. Ineffective Assistance of Counsel Claim

Hall states his trial counsel was ineffective by not objecting to certain portions of the prosecutor's guilt-phase closing arguments. To establish an ineffective assistance of counsel claim, Hall must (1) establish counsel's representation "fell below an objective standard of reasonableness" and (2) show the "deficient performance prejudiced" Hall. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To demonstrate prejudice, Hall must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

During the guilt-phase closing arguments, the prosecutor commented "[a]nyone who has been exposed to this case is frightened, frightened at the randomness, that there are people like Stanley Hall out there in the shadows." The prosecutor also remarked, "[Hall] is a shadow out there that has touched all of you, and people like him make people in our society worried every time our mother, our daughter, our sister, anyone leaves the house because at random for his purpose, his decision, that he was going to go kill [sic]." These prosecutorial comments are inflammatory and arguably improper. Hall's counsel should have objected. Although Hall's attorney's performance in these two instances may have fallen below an objective standard of reasonableness, Hall fails to establish prejudice. The remarks do not establish "a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." See id. The prosecutor's remarks do not approach the severity of the comments made by the Newlon prosecutor, where the prosecutor compared the defendant to infamous mass-murderers, gave a personalized "analogy to the jurors' self-defense of their own children," referenced war and courage, and insinuated all murderers should be put to death. Newlon, 885 F.2d at

1336. The prosecutor commented about the fear of society as a whole and how this case would affect anyone presented with the same situation.

### 9. Remaining Claims

Three of Hall's ineffective assistance of counsel claims–(1) trial counsel's failure to contact, interview, or call Burton as a witness; (2) trial counsel's failure to investigate whether the plea agreement would be effective if Hall's polygraph results were inconclusive; and (3) trial counsel's failure to endorse or call other witnesses–are procedurally barred as they were not raised before the Missouri Supreme Court. See King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (noting a habeas petitioner must raise "both the factual and legal bases for each ineffectiveness of counsel claim in the state courts" to preserve the claim).

Our precedent forecloses Hall's attack on Missouri's reasonable doubt jury instruction. See Harris v. Bowersox, 184 F.3d 744, 750-52 (8th Cir. 1999) (noting Missouri's reasonable doubt instruction satisfies due process in the wake of Victor v. Nebraska, 511 U.S. 1 (1994)).

Hall further contends the trial court violated his constitutional rights by not allowing Hall to ask prospective jurors if the jurors could consider life without parole for first degree murder. This contention fails because the trial court allowed Hall to ask the prospective jurors if the jurors could consider life without parole and the death penalty, thereby protecting Hall from prejudice. Cf. Ramsey v. Bowersox, 149 F.3d 749, 756 (8th Cir. 1998) (noting a trial court may refuse to ask a voir dire question "when the judge's overall examination, coupled with the charge to the jury, adequately protects the defendant from prejudice").

Finally, Hall's assertion the trial court impermissibly limited voir dire is meritless, because Hall fails to explain how the trial court limited his counsel's voir dire or how he was prejudiced.

## III. CONCLUSION

For the foregoing reasons, we conclude Hall's conviction and punishment does not result "in a decision that [is] contrary to, or involv[es] an unreasonable application of, clearly established Federal law" or "in a decision that [is] based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). Further, we conclude Rule 29.16 fails to comply with AEDPA's opt-in requirements. Therefore, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.