# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2084

_____

Toua Hong Chang,                       *
                                      *

          Petitioner - Appellant,      *
                                        * Appeal from the United States
          v.                        * District Court for the District
                                        * of Minnesota.
State of Minnesota,              *
                                        *

          Respondent - Appellee.     *

_____

Submitted: January 16, 2008
Filed: April 1, 2008

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

A Ramsey County, Minnesota, jury convicted Toua Hong Chang of one count of promoting prostitution of an individual under the age of eighteen for the benefit of a gang and two counts of first-degree sexual conduct. After Chang exhausted his state appeals, he petitioned the appropriate United States district court[1] for a writ of habeas corpus. In his petition, Chang contended that the State of Minnesota violated his Sixth Amendment right of confrontation at trial. The district court denied Chang's habeas

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

petition, and granted him a certificate of appealability on the Sixth Amendment issue. We affirm.

## I.    BACKGROUND

Chang's convictions arose from the sexual assault allegations of four teenage girls–X.L., T.T., P.H., and M.H.   As part of the investigation into these allegations, Detective Kevin Navara, of the Ramsey County Sheriff's Department, interviewed each girl separately. Laurel Edinburgh, a nurse practitioner at Midwest Children's Resource Center, also interviewed and examined X.L., P.H., and T.T., but not M.H.

At trial, only X.L., P.H., and T.T. testified.  No one could locate M.H. and she was unavailable to testify at the time of Chang's trial.  During X.L.'s testimony, she gave the following account:  X.L. met Chang and one of his friends during the summer of 2002.  Chang would pick up X.L., P.H., and M.H. and take them to his friend, Peter's, house.  There they smoked methamphetamine.  During X.L.'s third or fourth visit to Peter's house, Chang told the girls they would have to either pay for the methamphetamine or have sex with some men Chang knew.  X.L. had no money, and to satisfy Chang's demands, she had sex with two of the three men that Chang called over to Peter's house.  P.H. gave a similar account during her testimony.  T.T. testified that she knew X.L., P.H., and M.H, and that she had smoked methamphetamine with them and Chang.

The three girls' testimony differed in one respect.  X.L. testified that on one occasion, Chang and his friend, Yang, picked her and P.H. up and took them to a garage, where they smoked methamphetamine.  While the girls were in the garage, Chang left and later returned to find that Yang had spilled some of the methamphetamine.  Chang then loaded a large black gun and threatened to kill Yang and the girls.  Chang told the girls that they would have to have sex to pay for half of the drugs.  Chang then ordered Yang and X.L. to leave the garage.  Only Chang and

P.H. stayed in the garage. When P.H. exited the garage, she looked like she had been crying. Later, on their way home, P.H. told X.L. that Chang had tied her up and sexually assaulted her. During P.H.'s testimony, she stated that T.T. was at Chang's during the sexual assault, not X.L. T.T., however, testified that she knew of the sexual assault, but it was X.L. who was present, not her.

Nurse Practitioner Edinburgh also testified at trial. She testified regarding the accounts provided to her by X.L., P.H., and T.T. She also testified that a physical examination of X.L. and P.H. revealed that they were subjected to a forceful sexual assault.

As part of Chang's defense, he claimed that M.H. and her boyfriend, a rival gang member, fabricated the sexual assault allegations against Chang, and that M.H. directed the other girls to falsely accuse Chang. Chang believed that M.H. did this because she thought he was going to harm her boyfriend. In an effort to convince the jury that the allegations were conjured up by M.H., Chang called two witnesses to testify about out-of-court statements M.H. made in February 2003. The first witness testified that M.H. had told her that she falsely accused Chang of sexually assaulting her because she believed Chang was going to do something to her boyfriend. The second witness testified that she was present when M.H. told the first witness that she falsely accused Chang to protect her boyfriend.

The government called Detective Navara to rebut Chang's defense theory that M.H. falsely accused Chang. Detective Navara testified that M.H. never mentioned to him that Chang sexually assaulted or prostituted her. Detective Navara also gave the following testimony:

Q:   Now, was [M.H.] able to corroborate what the other girls had told you?
A:   Yes.

Q: Now, you said [M.H.] was able to corroborate some things; was she able to corroborate some of the details of the incident at Peter's house?

A: Yes.

Q: Specifically, did she tell you about a vehicle that was there that night?

A: Yes.

Q: What did she tell you?

A: She stated that a black Mercedes S.U.V. showed up with three older Hmong males in it.

*****

Q: And [M.H.] described the black S.U.V.?

A: Yes.

Q: The Mercedes S.U.V.?

A: Yes.

Q: And so did the other girls?

A: Yes.

Q: Did [M.H.] also talk about a gun?

A: Yes.

Q: What gun did she describe?

A: She told me that [Chang] had a long black gun with large bullets, and she also stated that [two other men] also had handguns.

Q: Now, you found a long black gun, didn't you?
A: Yes.

*****

Q: Did [M.H.] also talk about crystal methamphetamine?
A: Yes.

Q: Did she say who she got that from?
A: Yes. She told me that [Chang and three other men] were the primary people that provided the girls with crystal meth.

Q: And did she tell you why the prostitution took place?
A: She stated that the girls were basically told that they had gotten the crystal meth for free and it was time for somebody to pay up.

It is this testimony that Chang challenges on Sixth Amendment grounds.

Chang did not object to this testimony, and the trial court did not give any limiting instruction at the time the testimony was admitted. The trial court, however, did include the following jury instruction at the close of evidence: "[e]vidence of any prior inconsistent statement should be considered only for the purpose of testing the credibility and weight of the witness's testimony."

After two days of deliberations, the jury convicted Chang on all counts. Chang then appealed his convictions to the Minnesota Court of Appeals, arguing, inter alia, that the admission of M.H.'s out-of-court statements violated his Sixth Amendment

right of confrontation. The Minnesota Court of Appeals, reviewing the Sixth Amendment issue for plain error, affirmed Chang's conviction. Chang then sought review in the Minnesota Supreme Court, which denied his petition for review. Chang next turned to federal court by filing a petition for writ of habeas corpus in district court. The district court denied the petition and granted him a certificate of appealability on the Sixth Amendment issue. Chang now appeals to this court.

## II.    DISCUSSION

In habeas corpus proceedings, our review is limited to the issue in the certificate of appealability. Pruitt v. United States, 233 F.3d 570, 572-73 (8th Cir. 2000). We review the district court's findings of fact for clear error and its conclusions of law de novo. Garcia v. Bertsch, 470 F.3d 748, 752 (8th Cir. 2006). We also apply a presumption of correctness to the state court's findings of fact. Richardson v. Bowersox, 188 F.3d 973, 977 (8th Cir. 1999). We may grant habeas relief "only if the adjudication by the state courts 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,'" as determined by the Supreme Court, or "'resulted in a decision that was based on an unreasonable determination of the facts.'" Kenley v. Bowersox, 275 F.3d 709, 711 (8th Cir. 2002) (quoting 28 U.S.C. § 2254(d), (e)(1)).

Nevertheless, even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, our analysis is not complete. Specifically, we must apply Brecht's harmless-error analysis, unless the error was a structural defect in the trial that defies harmless-error analysis. Brecht v. Abrahamson, 507 U.S. 619, 629 (1993).[2] Under Brecht, habeas relief is proper only

---

[2]In a § 2254 proceeding, "a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the . . . standard set forth in Brecht, whether or not the state appellate court recognized the error and reviewed it for harmlessness under 'the harmless beyond a reasonable doubt' standard set forth in

if the error had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Id.</u> at 623 (internal quotations omitted). A "substantial and injurious effect" occurs when the court finds itself in "grave doubt" about the effect of the error on the jury's verdict. <u>O'Neal v. McAninch</u>, 513 U.S. 432, 435 (1995). "Grave doubt" exists where the issue of harmlessness is "so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." <u>Id.</u> With that said, under <u>Fry</u>, we are not required to conduct a formal application of both the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and <u>Brecht</u> because the <u>Brecht</u> analysis "obviously subsumes the [AEDPA test]." <u>Fry</u>, 127 S. Ct. at 2327.[3]

---

<u>Chapman</u>. <u>Fry v. Piller</u>, 127 S. Ct. 2321, 2328 (2007) (quoting <u>Chapman v. California</u>, 386 U.S. 18, 23-24 (1967)). This differs from this Circuit's previous approach. Before <u>Fry</u>, we applied <u>Chapman</u>'s harmless-error analysis in a habeas proceeding when the state court did not conduct its own <u>Chapman</u> analysis. <u>See</u> <u>Evans v. Lock</u>, 193 F.3d 1000, 1003 (8th Cir. 1999).

[3]We decline to conduct a plain-error review as the State of Minnesota requests. There appears to be a decisional split within our Circuit regarding the appropriateness of plain-error review in the habeas context. In <u>James v. Bowersox</u>, Chief Judge Loken wrote that "we may not simply conduct our own plain error review <i>de novo</i>," but must apply AEDPA (and, according to the Supreme Court in <u>Fry</u>, <u>Brecht</u>). 187 F.3d 866, 869 (8th Cir. 1999). This rule is in line with the Supreme Court's ruling in <u>Frady</u>. In that case, the Court held that "the 'plain error' standard is out of place when a prisoner launches a collateral attack against a criminal conviction." <u>United States v. Frady</u>, 456 U.S. 152, 164 (1982) (ruling in the context of a § 2255 proceeding); <u>see also id.</u>, at 181 (Brennan, J., dissenting) (noting that the "Court's assumption that [plain-error review] is inapplicable to proceedings under § 2255 is built upon dictum in <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977), which suggests that the plain-error Rule is inapplicable in a habeas corpus action under 28 U.S.C. § 2254"). In contrast, courts such as the <u>Richardson</u> court have reviewed for plain error when the state court did so. 188 F.3d at 979. When there is an intra-circuit split, we are free to choose which line of cases to follow, and we choose to follow <u>James</u> and <u>Frady</u>. <u>Kostelec v. State Farm Fire & Cas. Co.</u>, 64 F.3d 1220, 1228 n.8 (8th Cir. 1995).

The only issued certified for appeal is whether the admission of M.H.'s out-of-court statements violated Chang's Sixth Amendment confrontation right. Because we conclude that any constitutional error with respect to the introduction of M.H.'s out-of-court statements lacked a substantial and injurious effect, we see no reason to reach the Sixth Amendment issue.

To help us determine whether the admission of M.H.'s out-of court statements rose to the level of Brecht error, we consider the following factors: (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (stating the factors a court should consider when conducting a Chapman harmless-error analysis).

Here, the admission of M.H.'s statements did not rise to the level of Brecht error. Indeed, M.H.'s statements added nothing to the prosecution's case and only served to corroborate the testimony of the three girls who did testify at trial. These three girls each implicated Chang with their testimony. Furthermore, Chang cross-examined each girl and Detective Navara. Additionally, Nurse Practitioner Edinburgh testified that both X.L. and P.H. exhibited signs of forceful sexual abuse. And although each female's testimony differed slightly, there was a plethora of evidence from which a jury could find Chang guilty. Thus, any trial court error does not require our reversal.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Chang's petition for writ of habeas.

_____